UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| ROBERT E. STAFFORD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-cv-266 |
| | ) | |
| v. | ) | |
| | ) | COMPLAINT |
| BOJANGLES' RESTAURANTS, INC., | ) | |
| a North Carolina Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Robert E. Stafford, Jr. ("Plaintiff" or "Stafford"), individually, brings this action against Bojangles' Restaurants, Inc. ("Defendant" or "Bojangles"), and hereby alleges upon personal knowledge and information and belief as follows:

## NATURE OF THIS ACTION

1. This action is brought by Plaintiff, a homosexual male, to recover damages for Defendant's discriminatory and otherwise illegal conduct in, among other things, discriminating against him and discharging him because of his sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

2. Plaintiff further brings this action for violation of to recover (i) unpaid minimum wages, (ii) unpaid overtime premiums, (iii) unpaid bonuses/commissions, and (iv) statutory penalties, including liquidated damages, for Defendant's violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, specifically 29 U.S.C. §§ 207, 216(b) ("FLSA").

3. Plaintiff further seeks damages for Defendant's policy and practice of suffering or permitting Plaintiff to work without timely paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13 ("NCWHA").

4. Plaintiff further seeks damages for wrongful discharge in violation of North Carolina public policy and the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1, *et seq*.

5. Plaintiff further seeks damages for interference with his rights under the Family Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("FMLA").

6. Plaintiff also seeks redress for violations of the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.* ("EPA"), in that Defendant failed to pay him at the same rate of pay as heterosexual comparators even though Plaintiff had more seniority and performed similar duties requiring the same skill, effort, qualifications and responsibility as his heterosexual counterparts.

**PARTIES**

7. Plaintiff is a resident of Waxhaw, Union County, North Carolina. At all relevant times, Plaintiff was an "employee" of Defendant, as defined in 42 U.S. Code § 2000e and the NCWHA.

8. Bojangles' Restaurants, Inc. is a North Carolina Corporation with its principal place of business in Raleigh, North Carolina. Defendant Bojangles, through its agents, has authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiff in this case, and the authority to make decisions

1

regarding wage and hour classifications, including the decisions to as to employee compensation and capital expenditures. At all relevant times, Defendant, through its agents, acted in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the decision to not pay Plaintiff for wages earned as required by the FLSA.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, among them Title VII of the Civil Rights Act of 1964, as amended, the FLSA, 29 U.S.C. §§ 201 et seq., and the FMLA, 29 U.S.C. § 2601, *et seq*.

10. Venue is properly placed in this district pursuant to 28 U.S.C. § 1391(c) in that Plaintiff's residence is in Waxhaw, North Carolina, and Plaintiff primarily worked at Defendant's location in Waxhaw, North Carolina.

11. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## ADMINISTRATIVE REMEDIES

12. Plaintiff satisfied his obligation to exhaust his administrative remedies by timely filing a Charge of Discrimination against Bojangles with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex.

13. The EEOC issued a Notice of Right to Sue on February 5, 2020. Plaintiff timely brings this action within ninety (90) days of his receipt thereof.

14. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTUAL ALLEGATIONS

15. Plaintiff was hired by Bojangles as a crew member on or about April 14, 2018.

16. Plaintiff worked 40 hours or more each week, on average, during his entire employment with Bojangles.

17. Throughout his tenure with Bojangles, Plaintiff consistently and accurately performed his duties and met and/or exceeded all job requirements. He never had any disciplinary issues.

18. At all relevant times, Plaintiff had excellent relationships with his colleagues and customers, often covering shifts for his teammates. Plaintiff was often complimented by customers for his outstanding work efforts. Plaintiff consistently earned rewards through the Bo Star Incentive Reward Program.

19. In November 2018, Plaintiff completed the required hands-on training to work as a Shift Manager and began working as Shift Manager at that time. Upon information and belief, Defendant's policy was that employees were required to be certified as a Shift Manager to perform that role.

20. In April 2019, Plaintiff completed the second stage of the training requirements to work as a Shift Manager which included completion of a handbook and review of forty-seven (47) training videos, which were completed at home.

21. Defendant at all times had actual knowledge Plaintiff had completed the required video/training from home yet failed to pay him minimum wages for hours spent completing. Plaintiff was promised an increase in pay along with the increase in responsibilities from the time he first began working as Shift Manager. Plaintiff was told that this position would eventually lead into the Assistant Unit Director position.

22. In his new position as Shift Manager, and at the direction of Defendant, Plaintiff often travelled to different store locations to help when needed. Plaintiff frequently paid travel expenses out of his own pocket and was not reimbursed.

23. Plaintiff was not paid any wages for the travel he was required to make between stores.

24. Plaintiff was frequently required to stay on the premises, on duty, after closing to clean up and close down the restaurant. Plaintiff was not clocked in during these times and was not paid for the hours worked.

25. In July 2019, Plaintiff discovered that he had not been receiving increased pay commensurate with his new position as a Shift Manager and was still receiving the lower crew member pay rate.

26. Plaintiff repeatedly contacted Human Resources regarding this discrepancy. When Plaintiff would request clarification, there always seemed to be miscommunication as to who was responsible for gathering and processing the necessary information.

27. Defendant, through its senior managers, had failed to properly facilitate the paperwork necessary to process Plaintiff's promotion and failed to pay Plaintiff as promised.

28. When Defendant finally began paying Plaintiff at the correct rate in August of 2019, he was nonetheless paid less than his heterosexual counterparts, even though he held the most seniority among the lower level managerial staff. Upon information and belief, Plaintiff was paid significantly less than the other shift managers, who were all heterosexual.

29. Plaintiff was repeatedly told that he would be promoted to Assistant Unit Director, but each time, on at least three occasions, Defendant filled the positions with other employees, all heterosexual, and all of whom Plaintiff had trained.

30. Plaintiff often had his nails manicured. Defendant, through its agents, made several remarks to Plaintiff telling him to watch his mannerisms.

31. On January 25, 2020, Plaintiff, through no fault of his own, was involved in a car accident and had to miss a scheduled shift. On February 1, 2020, Plaintiff had to call out of work again due to a family emergency when his sister was hospitalized due to severe lupus complications. The following morning on February 2, 2020, around 2 a.m., Plaintiff himself was admitted to the hospital due to low blood pressure resulting in unconsciousness.

32. Plaintiff's medical conditions constituted qualifying events under the FMLA, triggering Defendant's responsibility to offer FMLA leave to Plaintiff.

33. Instead, without any warning or FMLA discussion occurring, Defendant terminated Plaintiff for being "undependable" and "unreliable," despite his otherwise impeccable attendance record prior to the two medical incidents leading up to his termination, neither of which were within his control.

34. Moreover, during his employment, several of his coworkers failed to meet requirements and/or acted in ways that would have warranted termination, but were never reprimanded. Specifically:

   a. In September 2019, Malcom Boykin, a heterosexual, put a knife to Plaintiff's head while Plaintiff was at work counting money. Plaintiff reported this incident to his supervisor, but no disciplinary action was taken.

   b. In November 2019, Mr. Boykin called Plaintiff a "niggah" in front of customers. Plaintiff again reported this incident to his supervisor and no disciplinary action was taken.

   c. Dillon Lewis, another Shift Manager, frequently called out or was tardy for his shifts. Over the course of ten months from February 2019 through December 2019, Mr. Lewis was late or absent at least fourteen (14) times. Other than the disciplinary actions implemented by Plaintiff himself, no other disciplinary measures were taken.

35. Defendant, through its managers, treated Plaintiff differently than every other heterosexual employee.

36. Plaintiff earned monetary rewards through the Bo Star Incentive Reward Program. As of February 2, 2020, Plaintiff had $250 in outstanding employee rewards. Plaintiff has not been paid for those bonus rewards.

37. Plaintiff filed a Charge of Discrimination with the EEOC on or about February 2, 2020, alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964.

38. On February 5, 2020, the EEOC issued a Notice of Right to Sue letter.

## FIRST CAUSE OF ACTION
### (Title VII – Discrimination on the Basis of Sex)

39. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

40. The First Cause of Action arises from Defendant's violation of Title VII, for discrimination based on gender/sexual orientation.

41. At all relevant times, Bojangles was an "employer" under Title VII, that engaged in an industry affecting commerce and had more than fifteen (15) employees, as defined in 42 U.S. Code § 2000e.

42. Plaintiff, a homosexual male, was repeatedly passed over for promotion to the Assistant Unit Director position.

43. When Plaintiff initially accepted the role as Shift Manager, Defendant failed to process his paperwork for nine months and continued to pay Plaintiff a lesser rate than other heterosexual employees in his position.

44. Plaintiff was terminated for allegedly being undependable and unreliable, despite his long-standing record of dependability and reliability.

45. While Plaintiff was terminated for misconduct, other heterosexual employees who had failed to perform their job requirements were not disciplined and maintained their employment and did not suffer the adverse consequences to their careers and reputation that Plaintiff suffered.

46. Plaintiff was unlawfully discriminated against on the basis of sex, specifically, his sexual orientation, by Defendant when he was passed over for promotion, paid less than other employees in his position, and eventually terminated.

47. Plaintiff has suffered damages because of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, in an amount to be determined by a jury.

## SECOND CAUSE OF ACTION
### (Violation of Fair Labor Standards Act – Unpaid Wages)

48. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

49. The Second Cause of Action arises from Defendant's violation of the FLSA, for the failure to pay at least minimum wage for every hour worked by Plaintiff.

50. At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

51. At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

8

52. At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

53. At all times hereinafter mentioned, Plaintiff has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

54. At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

55. Defendant violated the FLSA by not paying Plaintiff for every hour that he worked in that Defendant failed to pay Plaintiff for training and travel time that was on the clock but unpaid.

56. Defendant also violated the FLSA by not paying Plaintiff his promised wages as Shift Manager from November 21, 2018 through July 28, 2019.

57. Defendant's violation of the FLSA was willful.

### THIRD CAUSE OF ACTION
**(Violations of North Carolina Wage and Hour Act)**

58. Plaintiff reasserts the allegations set forth in the above paragraphs.

59. The Third Cause of Action arises from Defendant's policy and practice of suffering or permitting Plaintiff to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

60. At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

61. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

62. Defendant violated these statutes by failing to pay Plaintiff all promised and earned wages on the employee's regular payday for all hours worked.

63. Defendants also violated Plaintiff's rights under the NCWHA by failing to pay and diverting from Plaintiff earned bonuses through the Bo Star Incentive Reward Program that he procured before his employment ended on February 2, 2020.

64. Defendant willfully violated Plaintiff's rights under the NCWHA.

65. As a result of Defendant's willful action, Plaintiff is entitled to recover liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22.

66. Plaintiff is entitled to recover his attorneys fees pursuant to N.C. Gen. Stat. § 95-25.22(d).

## FOURTH CAUSE OF ACTION
### (Wrongful Discharge in Violation of Public Policy)

67. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

68. Defendant employed at least fifteen (15) employees at all relevant times.

69. In doing the acts alleged above, Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1 by terminating Plaintiff based on his sexual orientation.

70. Defendant violated the public policy by terminating Plaintiff after he exercised his rights and in good faith opposed what he viewed as injurious conduct as set forth in the paragraphs above.

71. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

72. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Violation of FMLA - Interference)

73. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

74. At all times hereinafter mentioned, Defendant has been and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

75. At all relevant times, Plaintiff was an "eligible employee" with the definition of FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendant employed

Plaintiff for at least 12 months, and Plaintiff performed at least 1,250 hours of service for Defendant during the 12-month period preceding the termination of her employment.

76. Plaintiff suffered two injuries and medical conditions that constituted qualifying events under the FMLA.

77. Plaintiff notified Defendant of these events, but Defendant failed to comply with its duty under the FMLA to notify Plaintiff of his eligibility to take FMLA leave.

78. Instead, Defendant terminated Plaintiff's employment for missing work due to these qualifying events.

79. As a direct, proximate and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**(Violation of EPA)**

80. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

81. At all relevant times, Defendant was an "employer" under the EPA and acted as Plaintiff's employer.

82. Defendant violated the EPA by providing Plaintiff with lower pay than similarly situated heterosexual employees on the basis his gender/sexual orientation, even though Plaintiff had more seniority and performed similar duties requiring the same skill, effort, qualifications and responsibility as his heterosexual counterparts.

83. Defendant subjected Plaintiff to discriminatory pay practices and discrimination in connection with the ancillary benefits and other terms of employment in violation of the EPA.

84. Plaintiff was not paid less than heterosexual counterpart on the basis of seniority, merit, quantity or quality of production, or a factor other than gender/sexual orientation, but was paid less due to his sexual orientation.

85. Defendant was the cause of the unlawful conduct complained of in this action.

86. The foregoing conduct constitutes a willful violation of the EPA within the meaning of that statute.

87. As a result of Defendant's conduct as alleged herein, Plaintiff has suffered and continues to suffer harm, including but not limited to, lost earnings, lost benefits, and other financial loss, and is entitled to statutory, liquidated and other damages.

88. Defendant's unlawful conduct as described in this Complaint has been willful and intentional. Defendant was aware of the employment practices it undertook were unlawful, yet it did not make a good faith effort to comply with the EPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

1. An Order awarding Plaintiff damages for Defendant's violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act of 1964;

13
Case 3:20-cv-00266-MOC-DSC   Document 1   Filed 05/06/20   Page 14 of 16

2. An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

3. An Order awarding Plaintiff damages for Defendant's violation of the FMLA, including backpay, lost wages, employment benefits, liquidated damages and any other compensation denied or lost because of Defendant's violation of the FMLA;

4. An Order awarding Plaintiff damages for Defendant's violation of the Equal Pay Act, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violation of the Equal Pay Act;

5. An Order pursuant to the NCWHA finding Defendants liable for unpaid back wages, commissions, and liquidated damages equal in amount to the unpaid compensation due to Plaintiff;

6. An Order awarding compensatory damages in an amount to be proven at trial;

7. An Order awarding punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

8. An Order awarding the costs of this action;

9. An Order awarding reasonable attorneys' fees;

10. An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

11. An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

>/s/ L. Michelle Gessner
> L. Michelle Gessner, NCSB#26590
> GESSNER LAW, PLLC
> 602 East Morehead
> G. G. Galloway House
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442
> Fax: (980) 206-0286
> Email: michelle@mgessnerlaw.com
>
> *Attorney for Plaintiff*