UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-266-MOC

| | |
|---|---|
| ROBERT E. STAFFORD, JR. on behalf of himself and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BOJANGLES RESTAURANTS, INC., )<br>)<br>)<br>Defendant. )<br>) | **ORDER** |

This matter is before the Court on Plaintiff's Motion to Allow and Accept Late Received Opt-in Plaintiffs Consents. (Doc. No. 211). Defendant opposes the motion. For the following reasons, the Court grants the motion.

I.  BACKGROUND

Plaintiff Stafford, on behalf of himself and others similarly situated, seeks relief under the Fair Labor Standards Act ("FLSA") on the grounds that Defendant Bojangles' Restaurants Inc. ("Defendant" or "Bojangles") failed to pay Plaintiff and other similarly situated current and former non-exempt hourly shift managers in accordance with the FLSA by failing to pay minimum wages and earned overtime wages, including overtime bonus premiums, for all hours worked on their regular payday at the rate required by the FLSA.

On November 2, 2020, the Court entered an order conditionally certifying a collective action of shift managers. The Court ruled Defendant was to provide Plaintiff's counsel with the names, addresses, e-mail addresses, telephone numbers and dates of employment for all persons who are, have been, or will be employed by Defendant as non-exempt hourly employees at any

1

of Defendant's U.S. locations from July 14, 2017 to the present. (Doc. No. 27).

The order further provided that the opt-in period shall commence seven days after Defendant produces the above information and remain open for 60 days thereafter. Plaintiff received the employee information on November 23, 2020. The opt-in period thus extended to January 29, 2021. Thereafter, notice was sent out first by email and then by regular mail. Unfortunately, many of the addresses Bojangles provided were old and had to be forwarded.

Approximately 1,370 Notices were returned as non-deliverable with no forwarding address. Several hundred of the incorrect or inaccurate addresses belonged to current Bojangles employees. To date, there are approximately 550 Opt-in Plaintiffs enrolled in this case. Of the 550 Opt-in Plaintiffs who filed Consents to Join, 54[1] filed those Consent forms after January 29, 2021. (Doc. Nos. 173–83, 186–89, 191). Plaintiffs' counsel has obtained 31 declarations from Opt-in Plaintiffs whose Consent forms were filed after January 29, 2021 with their explanations for the delay. (Pl. Ex. A). Furthermore, the justifications these 31 opt-ins provided for any delay in returning the consent forms were substantially similar and should be taken as representative proof to justify the delay for all late Opt-in Plaintiffs.

Bojangles was made aware as early as February 1, 2021, that Plaintiffs intended to continue to file Consent forms in light of the ongoing problems the US Postal Service had been, and still is, enduring and because of the global pandemic slowing down the mail service. Many Consent forms were signed and mailed, but not received until a week or so later. To date, Bojangles has not sought to strike any of the Consent forms filed by late Opt-in Plaintiffs and has

---

[1] Defendant appears to be including in its count of "late" filed notices, twelve (12) notices that were filed on Saturday, January 30, 2021 at ECF Nos.172-1 through 172-12. These notices were clearly received by Plaintiffs' counsel by January 29, 2021 as required by the Court's authorized notice.

conducted discovery and produced some discovery related to these individuals.

## II. DISCUSSION

While the FLSA outlines the procedure for individuals to join a collective action as potential plaintiffs under § 256(b), it does not specify when the potential plaintiffs must opt-in to the action. E.g., Heaps v. Safelite Solutions, LLC, No. 2:10-CV-729, 2011 WL 6749053, at *1–2 (S.D. Ohio Dec. 22, 2011); see 29 U.S.C. §§ 216(b), 255, 256. Instead, opt-in deadlines are set by the trial court. See Hoffman–La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). The purpose of setting the deadline is important as well. The district court "set[s] the outside filing date as a practical matter, to permit ascertainment of the actual parties to the litigation well in advance of trial." Monroe v. United Air Lines, 94 F.R.D. 304, 305 (N.D. Ill. 1982).

Under Federal Rule of Civil Procedure 6(b)(1), extensions of time are granted only when "good cause" exists. The FLSA does not prescribe the standard under which a trial court should consider whether potential plaintiffs may join a collective action by filing the consent forms after the stated deadline. Ruggles v. Wellpoint, Inc., 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009). In determining whether to permit the late filing of a consent to sue in FLSA cases, district courts apply the five-factor test set forth in Ruggles: (1) whether good cause exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA. Ruggles, 687 F. Supp. 2d at 37. See, e.g., Lorenzo v. Prime Commc'ns, L.P., No. 5:12cv69, 2017 WL 9439107, at *8 (E.D.N.C. Feb. 14, 2017); Regan v. City of Charleston, S.C., No. 2:13cv3046, 2015 WL 1299967, at *2 (D.S.C. Mar. 23, 2015); and Randolph v. PowerComm Constr., Inc., 309 F.R.D. 349, 361 (D. Md. 2015). No single factor is dispositive. Adams v. Nature's Expressions Landscaping, Inc., No. 5:16cv98, 2017 WL 4844560, at *4 (E.D. Ky. Oct. 25, 2017)

(citing Lykins v. First Acceptance Corp., 3:13-cv-01374, 2015 WL 2367155, at *2 (M.D. Tenn. May 18, 2015)). This Court finds that these factors weigh in favor of the late opt-ins here.

(1) Good Cause

First, Plaintiff has shown that good cause exists to allow the late opt-ins. Good cause has been deemed to exist when the potential plaintiff was not living at the address where the notice was sent and the plaintiff immediately responded to the notice once informed of it. Davis v. Universal Am-Cam, Ltd., No. 2:10cv2947, 2012 WL 12915289, at *2 (D.S.C. July 26, 2012) (good cause found in light of the difficulty Plaintiff experienced in identifying the correct mailing address for many of the individuals).

(2) Prejudice to the Defendant

Plaintiff has also shown that the untimely opt-ins will not prejudice Bojangles. Defendant has not claimed that the late opt-ins during the discovery period prevented it from developing a defense against the new plaintiffs' claims. In Curko v. G.A.J.S., Inc., No. 19-4426, 2021 WL 1100611, at *4 (D.N.J. Mar. 23, 2021), the district court noted that "the onset of the pandemic and its related problems have slowed the Court's administration of the docket including this case. Plaintiff has also shown that any delay in discovery and prejudice precipitated by the entry of these late Opt-in Plaintiffs is negligible at best. Indeed, given the challenges posed by the pandemic, including the likelihood that this case would not be given a trial date anytime soon, any delay resulting from these five late notices would be minor and should have no material effect on the litigation." Furthermore, "[w]hen . . . the later filers are a small part of the overall class and the litigation is at an early stage, courts rarely find prejudice if they are allowed to opt-in." Coronado v. Houston, No. H-13-2179, 2014 WL 6674292, at *3 (S.D. Tex. Nov. 24, 2014); see also Robinson—Smith v. Gov. Employees Ins. Co., 424 F. Supp. 2d 117, 124 (D.D.C. 2006)

4

("Allowing four more plaintiffs into the collective action already containing 269 represents only a limited additional exposure for the defendant, given the relatively small number . . . ."); Monroe v. United Air Lines, Inc., 94 F.R.D. 304, 305 (N.D. Ill. 1982) ("Individual discovery for any particular plaintiff is minimal, and the trial is still a few months away."); Benavidez v. Piramides Mayas Inc., No. Civ. A-09-5076, 2013 WL 1627947 (S.D.N.Y. Apr. 16, 2013) (because the two late filers represented only 2.7 percent of the 74 plaintiffs in the action, allowing them to join 3 months after the deadline without showing good cause would not prejudice the defendants). In sum, the lack of prejudice to Defendant weighs in favor of allowing the late opt-ins.

(3) How long after the deadline passed the consent forms were filed

Here, the late consent forms were all filed within three months of the deadline. Applying these factors, district courts in the Fourth Circuit have permitted a plaintiff to file an opt-in notice almost four months past the deadline. Randolph v. PowerComm Const., Inc., 309 F.R.D. 349, 361 (D. Md. 2015); Jones v. Fid. Res., Inc., No. RDB-17-1447, 2019 WL 4141015, *14 (D. Md. Aug. 30, 2019). Thus, this factor weighs in favor of allowing the late opt-ins.

(4) Judicial economy

The Court further finds that judicial economy will be served by allowing the late opt-in consents. If this Court were to deny the admission of these Opt-in Plaintiffs, they would still be able to file separate causes of action against Bojangles, who would still face the prospect of defending against their individual FLSA claims. See 29 U.S.C. § 256(b). There is little economy in "spawning identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future." See Abubakar v. Cnty. of Solano, No. Civ. S-06-2268, 2008 WL 550117, at *2 (E.D. Cal. Feb. 27, 2008) (noting the futility in requiring late Opt-in Plaintiffs to file separately

5

given the foreseeability of a consolidation order pursuant to Fed. R. Civ. P. 42(a)). This prospect would undermine the whole purpose of the collective action and render futile any attempts to maintain effective case management. Judicial economy is thus best served by permitting the late Opt-in Plaintiffs to join this collective action, rather than be required to institute separate individual actions, or another collective action, against Bojangles. Thus, this factor weighs in favor of allowing the late opt-ins.

(5) The remedial purposes of the FLSA

Finally, the Court finds that, in permitting the late opt-ins to file their consents to sue, the Court would be furthering the remedial purposes of the FLSA. See Kelley v. Alamo, 964 F.2d 747, 749–50 (8th Cir. 1992) ("The FLSA should be given a broad reading, in favor of coverage. It is a remedial statute that 'has been construed liberally to apply to the furthest reaches consistent with congressional direction.' A generous reading, in favor of those whom [C]ongress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines.'") (quoting Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959)). This factor weighs in favor of allowing the late opt-in Plaintiff consents.

**ORDER**

**IT IS, THEREFORE, ORDERED that:**

(1) Plaintiff's Motion to Allow and Accept Late Received Opt-in Plaintiffs Consents, (Doc. No. 211), is **GRANTED**.

Signed: October 22, 2021



6