**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-266**

| | |
|---|---|
| **ROBERT E. STAFFORD, JR.** *et. al.*, <br><br> Plaintiffs, <br> v. <br><br> **BOJANGLES' RESTAURANTS INC.**, a North Carolina Corporation <br><br> Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I, FLSA OVERTIME VIOLATION** |

**I.    INTRODUCTION**

Plaintiffs and Opt-in Plaintiffs move for partial summary judgment on liability under Count I of the Second Amended Complaint ("SAC") violation of the FLSA. For summary judgment purposes, Plaintiffs can demonstrate that they worked overtime hours without compensation and that Bojangles had actual or constructive knowledge of their overtime work. As this Court and others have acknowledged, Plaintiffs need establish *only one hour of unpaid overtime* to establish liability against Bojangles and obtain partial summary judgment; anything else relates only to damages. The evidence gathered to date "is so one-sided" that Plaintiffs must prevail as a matter of law.

For its part, Bojangles will not be able to meet its burden of showing there are any genuine issues of material fact. Bojangles has already admitted that it has no documentary evidence to refute Plaintiffs' claims because the evidence is all uniquely in Plaintiffs' possession. Further, Bojangles chose not to maintain and willfully destroyed any data and documents that it might have had available to refute Plaintiffs' claims.

The Court should grant Plaintiffs' motion for partial summary judgment on liability under Count I.

## II. LEGAL DISCUSSION

### A. Summary Judgment standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); see also *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must demonstrate that there is a genuine dispute of material fact to avoid summary judgment. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

Not every factual dispute will defeat a summary judgment motion - "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Further, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. Summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Further, "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]" *Id.* Likewise, conclusory allegations or denials, without more, are insufficient to defeat summary judgment. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Further, "[M]ere speculation

and conjecture" is insufficient to defeat a motion for summary judgment." *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir. 1997).

A plaintiff bringing a claim under the FLSA "carries the burden of proving all elements of his or her claim."[1] *Sampson v. Apollo Resources, Inc.,* 242 F.3d 629, 636 (5th Cir. 2001). "If the movant bears the burden of proof on an issue . . . he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. The Upjohn Company*, 780 F.2d 1190, 1194 (5th Cir. 1986).

**B.     Law governing FLSA overtime claims.**

"In the Fourth Circuit, an employee who seeks to recover on an FLSA uncompensated overtime claim must prove: (1) that he or she worked overtime hours without compensation, showing the amount and extent of his or her overtime work as a matter of just and reasonable inference; and (2) that his or her employer suffered or permitted the uncompensated overtime work, that is, that the employer had actual or constructive knowledge of the employee's overtime work." *Galleher v. Artisanal, LLC*, 2021 U.S. Dist. LEXIS 12905, *13 (W.D.N.C. Jan. 25, 2021), citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). Further "Plaintiffs need establish *only one hour of unpaid overtime* to establish liability against Defendants in this matter and obtain partial summary judgment — anything else relates only to damages." *Id*. (emphasis added), citing *Estrella v. P.R. Painting Corp.*, 356 Fed. Appx. 495, 497 (2d Cir. 2009); *Villareal v. El Chile, Inc*., 776 F. Supp. 2d 778, 795 (N.D. Ill. 2011).

**1.     Plaintiffs can establish one hour of unpaid overtime**

This case is proceeding as a collective action and Plaintiffs expect Bojangles' decertification motion to be denied as well. As such, representative proof is appropriate to prove

---

[1] In its Answer, Bojangles admits that it is covered by the FLSA. [ECF No. 272 at paragraph 38]

3

Plaintiffs' FLSA overtime claims. Indeed, FLSA collective actions are customarily tried based on representative proof to avoid unnecessarily wasting judicial resources with duplicative, cumulative, and never-ending testimony. See *Donovan v. Bel-Loc Finer*, 780 F.2d 1113, 1116 (4th Cir. 1985) (recognizing that requiring each plaintiff to testify would thwart the purposes of the sort of representational testimony clearly contemplated by *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

Based on the evidence compiled, Plaintiffs most certainly can establish *one hour* of unpaid overtime to establish liability against Bojangles. In support of their motion for class certification, Plaintiffs filed 67 Opt-in Declarations, each detailing the uncompensated hours, including overtime hours, they worked for Bojangles. [ECF No. 388-1 to 388-67] The declarations aver that Shift Managers were told that overtime was not allowed, that their hours, including overtime hours, were shaved, sometimes right in front of them and many times by Area Directors themselves. *Id.*

Plaintiffs also filed 29 deposition transcripts or excerpts therefrom, further detailing the uncompensated overtime hours worked, along with Bojangles' actual and/or constructive knowledge that those hours were worked. [ECF No. 388-68 to 388-97]

Plaintiffs have also previously filed additional declarations in support of their motion to allow late opt-ins [ECF No. 213] These declarations likewise detail the uncompensated overtime hours, as well as Bojangles' actual and constructive knowledge of the same.

The evidence already on file with this Court shows far in excess of the *one hour* of overtime needed to establish liability on summary judgment.

**2.  Bojangles had actual or constructive knowledge of Plaintiffs' overtime work.**

Under the FLSA, to "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). That broad definition effectuates the FLSA's remedial purpose by preventing an employer from circumventing the FLSA by feigning ignorance to its employees' overtime work. Further, work includes labor that the employer did not request but "knows or has reason to believe" that the employee is performing. 29 C.F.R. § 785.11. And, it includes work performed on the job site as well as at home. See *id*. § 785.12. Further, the FLSA places the onus on the employer to "exercise its control and see that the work is not performed if it does not want it to be performed." *Id.* § 785.13. An employer "cannot sit back and accept the benefits without compensating for them." *Id.*

Here, there is ample evidence demonstrating that Bojangles knew or had reason to know that Shift Managers were not being paid for all hours worked, including overtime hours.

As an initial matter, In addition, Bojangles was already sued by Shift Managers for the exact same FLSA violations in 2017 in *Sommerville, et al. v. Bojangles' Restaurants, Inc.*, Middle District of North Carolina, Case No. 1:17-CV-565. [ECF No. 387 at Ex. 1] Bojangles used the "lack of awareness" defense in *Sommerville* [ECF No. 387], but it cannot use that excuse twice, despite its efforts in this case. [ECF No. 16-1, ¶ 10][2]

Most, if not all of these declarations aver that it was the Store Managers and Area Directors who were expressly instructing Shift Managers (most of whom were scheduled for 40 hours a week) to work off the clock and/or that their overtime had to be cut because it was not allowed. [ECF No. 388-1 to 388-67] The overwhelming majority of Plaintiffs were told that

---

[2] The existence of the *Sommerville* case and evidence that Bojangles did nothing to change its policies afterward also demonstrates that Bojangles' conduct was willful for purposes of liquidated damages.

overtime was "not allowed," yet Bojangles deliberately maintained an overtime policy that did not state that unauthorized overtime would be paid. [ECF No. 381 at p. 27]

Also, notably, Bojangles deliberately revised its overtime policy after the *Sommerville* case to bury the provision promising to pay for all hours worked over 40 in a work week at time and a half. [ECF No. 387 at Ex. 2]

Plaintiffs can thus make out a prima facie case that Bojangles had actual (or at least constructive) knowledge of their overtime work. Under the circumstances here, Bojangles cannot feign ignorance to Plaintiffs' overtime work.

### C. *Mt. Clemens* burden shifting applies to Plaintiffs' overtime claims and can be used to prove Bojangles' liability.

Not that Plaintiffs need any additional assistance to establish they are entitled to a judgment in their favor on liability, but they do have the benefit of additional burden shifting under the facts of this case under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-88 (1946).

An employer has a non-delegable duty to keep accurate records of the hours that its employees work. See 29 U.S.C. § 211(c); *Anderson, supra*; *Butler v. DirectSAT USA, LLC,* 47 F.Supp.3d 300, 309 (D. Md. 2014) ("The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by the employees.").

In *Mt. Clemens Pottery Co.*, the Supreme Court addressed the burden of proof to recover for uncompensated work. See *id.* at 686-87. The Court stated: "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id.* at 687. However, "where the employer's records are inaccurate or inadequate," the Court opined that "[t]he solution . . . is not to penalize the employee by

6

denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id.* The High Court explained:

> In such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Without the burden-shifting provision, an employee would essentially be penalized, and the employer rewarded, for the employer's failure to comply with the record-keeping requirements of the FLSA. *Id.* Indeed, an employer who has failed to comply with the requirements that it maintains adequate employment records "pays for that failure at trial by bearing the lion's share of the burden of proof." *Gomez v. Tyson Foods, Inc.*, 2013 U.S. Dist. LEXIS 142586, *30 (D. Neb. Oct. 2, 2013) (citing *Secretary of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991)).

While the initial burden even under *Mt. Clemens* remains on the employee, "that burden is a minimal one." *Gomez*, 2013 U.S. Dist. LEXIS 142586, *30. The "proof" required under the burden-shifting provisions of *Mt. Clemens* may be nothing more than the employee's own credible sworn testimony, which does not have to be an exact recitation of times, dates, and hours worked to shift the burden of proof to the employer. *Arias v. United States Service Industries Inc.,* 80 F.3d 509 (D.C. Cir. 1996). This framework "does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty." *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988).

Importantly, the "adequacy of records" issue has to do with the evidence available to establish liability and damages, not the employer's failure to conform to a certain record-keeping

7

standard. *United States Dep't of Labor v. Five Star Automatic Fire Prot., LLC* (2021) 987 F.3d 436, 442. "Where, as here, the records do not allow the employee to show the uncompensated overtime work they completed, the burden shifting framework applies." *Id.*

Although *Mt. Clemens* burden shifting is often used to alleviate the employees' burden of establishing damages when the employer's records are inadequate or incomplete, district courts have used it to grant a plaintiff's summary judgment motion on liability in FLSA overtime cases. See, e.g. *Cardenas v. Edita's Bar & Rest., Inc*., 2020 U.S. Dist. LEXIS 258547 (E.D.N.Y., Sept. 30, 2020); *Lassen v. Hoyt Livery, Inc*., 120 F. Supp. 3d 165 (D.Conn., Aug. 5, 2015).

Bojangles does not disagree that *Mt. Clemens* applies to Plaintiffs' claims here. In its own summary judgment motion, Bojangles argues: "Plaintiffs must "'produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.' *Anderson v. Mount Clemens Pottery Co*., 328 U.S. 680, 687-88 (1946)." [ECF No. 383 at p.17] By extension, Bojangles thereby concedes that its records are incomplete and/or inadequate; because *Mt. Clemens* only applies where the employer fails to keep complete and accurate records.

As such, there should be no question that *Mt. Clemens* burden shifting dictates the respective burdens of the parties here. Bojangles also concedes that representative proof can be used to establish liability here. In its summary judgment motion, Bojangles argues: "Stafford, who seeks to represent a collective of about 550 individuals on overtime claims. . . " [ECF No. 383 at p. 20] Bojangles then proceeds to analyze the deposition testimony of the Named Plaintiffs, presumably as the "representative" proof it has selected for purposes of its summary judgment motion.

As shown above, Plaintiffs can establish the overtime worked by just and reasonable inference for purposes of liability at summary judgment.

**F.  Bojangles will be unable to meet its burden of demonstrating a genuine dispute of fact that Plaintiffs did not work at least one hour of unpaid overtime.**

Bojangles will be unable to demonstrate that Plaintiffs did not work at least one hour of unpaid overtime. Under *Mt. Clemens*, Bojangles will be unable to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

First, Bojangles has insisted throughout this litigation that there are no records available to prove Plaintiffs' off the clock work and/or time shaving claims and that the evidence is "uniquely" in Plaintiffs' possession. Indeed, even in its Answer, Bojangles admitted that "its timekeeping records do not reflect any "off the clock" work or "shaved hours." [ECF No. 272 at paragraph 49]

Second, Bojangles deliberately chose not to maintain electronic information that would have potentially allowed it to show that edits to employees' time were legitimate. Bojangles' ESI 30(b)(6) deponent, Jason McGhee provided considerable testimony admitting that Bojangles does not have the evidence it would need to refute Plaintiffs' claims because it chose not to preserve it and/or deleted it. For instance, Bojangles wrote its own inhouse program to pull timekeeping data from each store every night, but specifically chose not to include the data it had in its possession reflecting "who" made time adjustments or how much time was edited or exactly when it occurred. [ECF No. 292-2 at 24:5-28:6; 35:22-26:13] Bojangles also wrote the program so that it did not preserve the original time punch and only preserved the final, adjusted time punch even if the adjustment was made days after the original time punch was received by Bojangles corporate in its data warehouse. [ECF No. 292-2 at 217:19-220:25] At the time the

9

Complaint and Second Amended Complaint was filed in this case, Bojangles had in its possession relevant timekeeping data and failed to take any steps to preserve all timekeeping data for the class and/or collective as it was required destroyed and/or written over well after this case was filed and no efforts were taken to preserve. [ECF No. 292-2 at 39:2-10; 152:22-153:3; 154:9-20] 4) Bojangles took affirmative steps to further destroy timekeeping data it had in its possession in October 2020, after it had learned that this Court was going to conditionally certify the collective action. [ECF No. 292-2 at 43:8-15, 43:22-44:3; 62:5-63:7; 64:13-65:6; 154:9-20] Significant timekeeping data that had been transmitted from Bojangles' stores to its data warehouse at its corporate office was also destroyed and/or written over well after this case was filed and no efforts were taken to preserve. [ECF No. 292-2 at 39:2-10; 152:22-153:3; 154:9-20] Bojangles did not issue a litigation hold to its ESI leader - Jason McGhee - and did not take efforts to stop the writing over of data to meet Bojangles' preservation obligations. [ECF No. 292-2 at 26:8-15; 43:8-15; 96:9-19)

As such, Bojangles deliberately chose not to pull data from the store level that had captured and recorded who made a time edit, how much time was edited and when the edit occurred.

Fourth, Bojangles has admitted that it did not comply with its own policy that any edits to Shift Managers' time had to be authorized by the Shift Manager. Bojangles deliberately chose not to enforce this written policy. [ECF No. 341-3, Chase 30(b)(6) Depo. at 37:3-9; 43:7-49:10; 68:2-70:25; 118:20-120:12; 128:16-136:10; 141:10-142:4; 176:20-177:20] Chase admitted that these authorizations are necessary to determine if the edits to Shift Managers' time were "legitimate" and to verify concerns. [ECF No. 341-3 at 146:22-149:10; 153:22-157:23]

Bojangles' former Director of Human Resources, Jeannine Eubanks, testified that this policy was added to the Handbook because it was required by the federal government. [ECF No. 388-98, Eubanks Depo. at 48:2-51:4; 61:10-15; 82:17-83:11] Eubanks explained that Bojangles had been audited by the federal government and it was discovered that Bojangles' timekeeping records did not match the pay records. As a result of this audit, Bojangles was required to make sure all edits to time were documented. According to Eubanks, Bojangles enforced this policy during her tenure and anytime there was an adjustment to someone's time, there should have been a corresponding document. *Id*. She explained that the policy was important to resolve any discrepancies between an employee's paycheck and their time record. *Id.* Chase, Bojangles' 30(b)(6) witness, confirmed that everything in Eubanks Deposition was true and accurate. [ECF No. 341-3 at 8:19-9:14; 12:9-16]

Yet, Bojangles deliberately destroyed these documents even after this litigation was filed and now none of the documents exist, according to Bojangles. [ECF No. 341-3 at 12:21-17:5; 33:12-37:9; 52:1-68:1] Similarly, in its Responses to Plaintiffs' Request for Production Set Three, seeking "any and all documents showing" Bojangles complied with the written policy requiring employee authorization of time edits, Bojangles responded: "there are no documents in Bojangles' possession, custody, or control responsive to this Request." [ECF No. 388-99]

Several Bojangles' corporate witnesses, all prior Area Directors, testified that the requirement to obtain employee authorization for every time adjustment was a Bojangles' policy that was enforced and that such documentation did exist during the pendency of this litigation. [ECF No. 388-100, Workman Depo. at 35:18-45:4; 54:20-60:20; 71:9-24; 89:25; 106:17-21; 115:8-14; ECF No. 388-101, Faulk Depo. at 13:25-21:13; 42:13-44:13; ECF No. 388-102, Simpson Depo at 28:17-58:17; 32:10-32:16.] They all testified that one of the reasons for the

policy was to resolve any discrepancies between employees' time and pay and that each edit made would have that manager's code or name. *Id.* They all testified that they were never asked to locate these authorization forms nor instructed to preserve them. *Id.* But they all testified, along with Eubanks, that such documents existed and were maintained. *Id*.

Accordingly, Bojangles destroyed the very documents it would have used to show that any time shaving was legitimate and thus has no documentary evidence to refute Plaintiffs' claims. [3]

Fifth, Bojangles never performed any regular audits of employees' time to confirm its timekeeping policies were being complied with. [ECF No. 341-3 at 136:16-140:14] Bojangles believes it is strictly the employees' responsibility to keep track of their time. [ECF No. 341-3 at 137:28-138:10] Bojangles only policy for ensuring compliance is training employees on how to clock in and out. [ECF No. 341-3 at 73:21-77:19] In fact, Bojangles admits it has done nothing as a result of this lawsuit and the deposition testimony to date to determine whether it is in compliance with its timekeeping policies. [ECF No. 341-3 at 69:1-71:3] As such, Bojangles will not have any audit documents to refute Plaintiffs claims of unpaid overtime.

Sixth, Bojangles cannot even point to an official policy to pay Shift Managers for all hours worked because its policy expressly only applies to crew members [ECF No. 381-2] Crew members are not the same as Shift Managers. [ECF No. 388-100, Workman Depo at 76:10-22; ECF No. 388-101, Faulk Depo at 42:7-12]

---

[3] This additional spoliation will be the subject of Plaintiffs' upcoming motion for an adverse jury instruction. The significance of an adverse jury instruction is that the trier of fact will be permitted to infer that Bojangles destroyed the documents for an improper purpose. That is, the trier of fact can infer that the spoliated documents would have shown adjustments to time that were not authorized and thus that all time adjustments should be regarded as unauthorized under a common policy or practice to shave time.

Seventh, when Bojangles deposed the Opt-In Plaintiffs it selected to depose, it was very careful not to ask too many specific questions about working unpaid overtime, if any. [ECF No. 388-68 through 388-97] Clearly, Bojangles did not want to know the answers, but in doing so, it deprived itself of potential evidence, if any, it could have tried to use to refute the claims.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant their partial motion for summary judgment on the issue of FLSA liability.

Respectfully submitted this the 4th day of April, 2023.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiffs and Putative Class/Collective*
