UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-266

| | |
|---|---|
| ROBERT E. STAFFORD, JR. *et. al.,* | |
| **Plaintiffs,** | **PLAINTIFFS' RESPONSE IN OPPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| BOJANGLES' RESTAURANTS INC., a North Carolina Corporation | |
| **Defendant.** | |

I.      INTRODUCTION

Defendant Bojangles' Restaurants, Inc. ("Bojangles") moves for summary judgment on Plaintiff Robert Stafford's individual claims, the FLSA claims Stafford has brought on behalf of the similarly situated Opt-in Plaintiffs, as well as the state class claims brought by Stafford and the other Named Plaintiffs representing their respective states. At every turn, Bojangles' procedural approach and legal analysis is flawed. To the extent the Court reaches the substantive factual issues, there are far too many genuine disputes of material fact to grant summary judgment in Bojangles' favor.

To the extent Bojangles seeks to summarily adjudicate the FLSA claims of the Named Plaintiffs, the motion is so procedurally improper that it could be stricken from the Court's docket. Even if the Court is willing to consider the motion, Bojangles only includes evidence related to the eight Named Plaintiffs. There is ample evidence, from many other Opt-in Plaintiffs, as well as additional evidence related to Named Plaintiffs, which demonstrates that Bojangles is

most certainly not entitled to judgment in its favor as a matter of law. If anything, Plaintiffs are so entitled, as set forth in their Motion for Partial Summary Judgment.

Bojangles' attempt to summarily adjudicate Named Plaintiffs' state law claims fares no better. also seems to be seeking judgment on the pleadings, not summary judgment, on the state law claims of the Named Plaintiffs.

As such, the Court should deny Bojangles' motion in its entirety.

## II.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).

The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. LEGAL ARGUMENT

### A. Bojangles is not entitled to summary judgment on Stafford's individual claims.

#### 1. Bojangles fails to meet its initial burden of showing an absence of material facts on Stafford's Title VII claim, and there are genuine disputes of material fact.

Bojangles has not met its initial burden because the entire legal structure of its argument is flawed in several respects. First, Bojangles does not even mention *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020), which should be the cornerstone of any modern-day analysis of sexual orientation discrimination. Second, Bojangles analyzes Stafford's claims only under proof by direct evidence and by circumstantial evidence under *McDonnell Douglas* burden-shifting, omitting entirely any analysis of mixed motive discrimination. In particular, Bojangles did not analyze the facts of this case under the new mixed-motive standard the United States Supreme Court articulated in *Bostock*. Third, Bojangles mistakenly analyzes each example

of circumstantial evidence as a *separate claim*, but this is not how the Title VII claim is pleaded. And, if the burden could somehow shift to Stafford despite all these analytical defects, there are genuine disputes of material fact under the correct legal analysis.

### a. *Bostok* supports Stafford's Title VII claim but Bojangles ignores it.

Under Title VII of the Civil Rights Act of 1964, it is "unlawful . . . for an employer . . . to discharge any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (2021). Moreover, "an unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). an employer violates Title VII by firing someone for being homosexual or transgender. Furthermore, the United States Supreme Court in Bostok held that "[s]ex need only be 'one but-for' cause of the employment decision under Title VII, meaning the plaintiff's sex does not have to be the primary cause of the employer's action. *Id.* at 1739, 1744. It just needs to play a role in the reasoning behind the adverse employment action. *See id.* at 1739. That there are multiple factors does not change the employer's liability under Title VII.

*Bostock* described "but for" causation as "a sweeping standard . . . [because] [o]ften, events have multiple but-for causes." According to *Bostock*, "[w]hen it comes to Title VII, . . . the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its [adverse] employment decision. So long as the plaintiff's sex [or race, color, religion, or national origin,] was one but-for cause of that decision, that is enough to trigger the law." *Id.* at 1739, citations omitted. Under *Bostock*, instead of having to prove that an impermissible reason was the "sole" or "primary" reason the employer made an

adverse employment decision, the plaintiff has to show that an impermissible reason was "a but

for "reason, not "the but for" reason. *Id.* at 1741-46, 1748. Bojangles made no effort to analyze

this case under *Bostock'*s lenient standard.

> b.  **Bojangles fails to analyze the facts under the mixed-motive standard.**

Under Title VII, sex discrimination is generally evaluated using "the traditional but-for

causation standard[,]" though under certain circumstances, plaintiffs may also prevail "by

showing that a protected trait like sex was a 'motivating factor' in a defendant's challenged

employment practice." *Bostock, supra,* at 1739. "If the employer intentionally relies in part on an

individual employee's sex when deciding to discharge the employee—put differently, if changing

the employee's sex would have yielded a different choice by the employer—a statutory violation

has occurred." *Id.* at 1741. As such, "'Plaintiffs may prove . . .violations of Title VII either

through direct and indirect evidence of retaliatory animus,' referred to as the mixed-motive

framework, 'or through the burden shifting framework of *McDonnell Douglas*[.]" *Finkle v.*

*Howard Cty.*, 640 F. App'x 245, 247 (4th Cir. 2016) (quoting *Foster v. Univ. of Md.-E. Shore*,

787 F.3d 243, 249 (4th Cir. 2015)). "Only if a plaintiff cannot present direct evidence of a

discriminatory motive in the decision to terminate and the employer did not terminate the

plaintiff on a mixed-motive basis does the Court then look to apply the *McDonnell Douglas*

framework for indirect circumstantial evidence of the like." *Whitley v. SecTek, Inc.*, 2022 U.S.

Dist. LEXIS 52862, *16 (E.D. Va, March 23, 2022). Further, in Title VII cases involving a

mixed-motive for why an employer elected to terminate an employee, a plaintiff only has the

burden of proving by a preponderance of the evidence that he "suffered adverse work

conditions" and that his sex "was *a* motivating factor in any such work conditions imposed upon

5

[him]." *Desert Palace v. Costa*, 539 U.S. 90, 96 (quoting *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 858 (9th Cir. 2002)). "[D]irect evidence of discrimination is not required in mixed-motive cases." *Id.* at 101-02.

Here, Bojangles incorrectly argues that Stafford has only two options to survive summary judgment - direct evidence or circumstantial evidence using McDonnell Douglas burden-shifting. Because Bojangles completely fails to analyze the facts and evidence under the mixed-motive standing, which can be shown with either direct or indirect evidence, it fails to meet its initial burden, and the motion must be summarily denied.

> **c.      Bojangles failed to address Stafford's claim for termination on the basis of sexual orientation.**

The operative complaint frames the issues pertinent to a motion for summary judgment. Stafford's Title VII claim alleges several distinct violations and discriminatory events. Bojangles is required to dispose of each separate claim to succeed on summary judgment.  In addition, summary judgment must dispose of the entire claim. *Iredell Water Corp. v. City of Statesville* 2022 U.S. Dist. LEXIS 74994 (W.D.N.C., April 25, 2022) ("Thus, a party is not entitled to partial summary judgment unless such judgment would be dispositive of an entire claim.").

Here, Stafford alleges that he was terminated *on the basis* of his sexual orientation, alleging: "Plaintiff was unlawfully discriminated against on the basis of sex, specifically, his sexual orientation, by Defendant when he was singled out and told to change or control his appearance and personality traits (both of which were based on his sexual orientation), and he was passed over for promotion, paid less than other employees in his position, *and eventually terminated*. [ECF No. 16 at paragraph 98 (emphasis added)]. Bojangles failed to analyze this part of Stafford's Title VII claim. Instead, it analyzed only paragraph 95 in which Stafford alleged

6

disparate discipline. Nowhere in its motion does Bojangles show that there are no genuine disputes of material fact that Stafford was not terminated based on his sexual orientation. Since Bojangles has not met its initial burden on this aspect of Stafford's Title VII claim, the motion for summary judgment must be denied.

        **d.    There are genuine disputed issues of material fact on Stafford's Title VII claim.**

Bojangles misconstrues the evidence, particularly Stafford's deposition testimony, in attempting to show an absence of material fact on the three Title VII claims it does address. Since Bojangles attaches almost the entire transcript to the motion, it can be said that Bojangles actually creates its own dispute of fact on the face of the motion since it supplied the evidence harboring the disputed facts. Other portions of Stafford's deposition contain additional disputes of material fact.

- Stafford had over ten years of work experience, mostly in the food service industry, before coming to Bojangles. [ECF No. 383-2 at 17:8-33:18]

- Stafford started training (and working) as a shift manager in the summer of 2018. [ECF No. 383-2, 38:1-4]

- Stafford finished his training modules before he was officially made a shift manager in the Spring of 2019. [ECF No. 383-2 at 39:5]

- Stafford was terminated; he did not quit. [ECF No. 383-2 at 97:4-99:13]

- Stafford was asked specifically what evidence he had that his termination was based on his sexual orientation and he testified that it was that he should watch how he gestures and that he had long fingernails. [ECF No. 383-2 at 107:1-14]

- Stafford testified that he was the longest manager there getting paid the least. [ECF No. 383-2 at 111:21-112:2]

- Stafford received a text message from coworker Jennifer Alimo stating "As many people that just didn't show up or came and went as they pleased and they were petty enough to fire you." [Ex. B - Ex. 286 to Stafford Deposition, Vol. II; ECF No. 317-2 at pp. 2, 55:18-56:11]

- Stafford testified that his Area Director, Titus Shockley, told him to cut his nails in the context of his sexual orientation. [Ex. A; Stafford Deposition at 105:3-12]

- Stafford helped train many of the shift managers who were paid more than him. [ECF No. 383-2 at 33:4-36:13]

- Bojangles delayed in paying Stafford shift manager hourly rate for months by claiming he needed a drug test that they delayed in scheduling. [Ex. A at 51:15-57:4]

- Stafford was told he was shift manager and was given the workload of a shift manager but he was paid as a crew member. [Ex. A at 71:4-9]

- Stafford worked with Marcy Parker at McDonald's and they had the same level of experience. [ECF No. 383-2 at 112:16-21]

- Ebony Timms had a high school education just like Stafford. [ECF No. 383-2 at 113:5-6]

     **e.**    **There is additional evidence showing disputed issues of material fact.**

Because Bojangles twisted Stafford's deposition testimony so severely, he submits herewith a declaration explaining that testimony and addressing new issues not raised in his

deposition at Exhibit C. Notably, the declaration does not contradict the deposition testimony, it merely demonstrates precisely where Bojangles misconstrued his testimony. Stafford's declaration explains that the incident in which the Area Director told him to cut his nails was most certainly related to his status as a gay male with a full set of acrylics. [Ex. C at ¶ 8] He also explains that many female employees wore acrylics and had longer, painted nails, and were not told to cut their nails, despite Bojangles' written policy. [Ex. C at ¶ 9]

Stafford also explains that Bojangles did not increase his pay for many months even though he was working as a shift manager and even after he finished the training. [Ex. C at ¶ 2-3] When Bojangles finally increased his pay rate, it was at the lowest rate, even though he was very experienced as a shift manager at that time, having been working as one for almost nine months. [Ex. C at ¶ 4] In fact, Stafford trained all of the shift managers who earned more than him and were not homosexual. [Ex. C at ¶ 5]

Stafford further avers that when he complained about his lower pay rate, he was never told that it was because other shift managers were more experienced or more educated than him. [Ex. C at ¶ 6] He also never heard that opening shift managers are paid more than closing shift managers. And, in any event, he worked both shifts. [Ex. C at ¶ 7]

Based on the foregoing, a reasonable jury could rationally find in Stafford's favor on his Title VII claims.

> **2.** **Bojangles fails to meet its initial burden of showing an absence of material fact on Stafford's claim for wrongful termination in violation of public policy and there are genuine disputes of material fact.**

Bojangles' only basis for seeking summary judgment of Stafford's claim for wrongful termination in violation of public policy is that Stafford supposedly cannot defeat summary

judgment of his Title VII claim. However, as shown above, Bojangles failed to even meet its

initial burden of showing there are no genuine disputes as to any material fact and that it is

entitled to judgment as a matter of law. The burden does not even shift to Stafford to show

disputes of fact that genuine disputes of material fact, but he certainly can do so, as shown above.

> **3.** **Bojangles fails to meet its initial burden of showing an absence of material fact on Stafford's EPA claim and there are genuine disputes of material fact in any event.**

Bojangles argues that Plaintiff cannot establish his claim for equal pay because his

comparators are more experienced and/or educated than him. Bojangles claims it has shown that

the differences in pay were caused by "real differences" in education and experience. As an

initial matter, Bojangles fails to account for the months while Stafford was being worked as a

shift manager but only paid as a crew member (November 2018 to July of 2019). It also does not

address the time period after Stafford had completed his shift manager training but was still

being paid as a crewmember (May 2019 to July 2019). This pay differential is also part of

Stafford claim but was not addressed by Bojangles which is not limited to shift manager pay.

[ECF No. 19 at paragraph 119] Bojangles thus did not meet its burden of showing the entire

claim has no merit.

Beyond this defect, there are triable issues of material fact as to the level of education and

experience of Stafford's comparators. As Stafford testified in his deposition, one of his

comparators worked with him at McDonalds at the same non-managerial level as him. He also

trained all of the heterosexual shift managers that ended up earning more than him. Others had a

high school degree just like him and some were right out of high school. Stafford had at least ten

years of work experience under his belt when he began working for Bojangles, most of which was in the foodservice industry. Bojangles completely ignores this fact as well.

Considering all the evidence in the light most favorable to Stafford, a reasonable jury could rationally find in his favor on his EPA violation claim.

**B.    Bojangles is not entitled to summary judgment on the Plaintiffs' FLSA claims.**

**1.    Bojangles' motion is procedurally improper.**

Bojangles' motion for summary judgment of the FLSA claims is directed solely at the Named Plaintiffs. This means Bojangles essentially seeks to summarily adjudicate the claims of eight individual members of the FLSA collective. Since these individuals' status as "Named Plaintiffs" is legally irrelevant to the FLSA claims to which they are simply Opt-in Plaintiffs like the other 500-plus Opt-ins. This is highly improper and other courts have stricken such motions from the docket. See, e.g. *Weigele v. Fedex Ground Package Sys*. 2009 U.S. Dist. LEXIS 155031, *6 (S.D. Cal, March 20, 2009) ("Since Defendants' motions for summary judgment against individual Plaintiffs are improper, they are therefore **STRICKEN** from the docket. Defendant **SHALL NOT FILE** any further motions for summary judgment against individual Plaintiffs.")

Although summary judgment may be proper as to a portion of the class, summary judgment is not proper "against individuals selected at random who are not in any material way distinguishable from the other members of the class or subclass." *Pendlebury v. Starbucks Coffee Co.*, 2008 U.S. Dist. LEXIS 1170, 2008 WL 113667 (S.D. Fla. 2008); see also, *Hernandez v. Starbucks Coffee Co*.2011 U.S. Dist. LEXIS 77803 (S.D. Fla. June 29, 2011); *Mode v. S-L Distrib. Co., LLC,* 2021 U.S. Dist. LEXIS 165511.*44, fn. 19 (W.D.N.C. Aug. 31, 2021).

In *Pendlebury*, defendant Starbucks filed a motion for summary judgment against the two named plaintiffs on the FLSA claims, which was deemed improper:

> Allowing Defendant to move for summary judgment against particular individuals who are indistinguishable from other members of the class defeats the entire purpose of a collective action. Under Defendant's proposal, Plaintiffs are faced with the potential of responding to hundreds of individual motions. This scenario would waste the time and resources of both Plaintiffs and the Court. This action has been certified as a collective action, and as such, the Court will only address dispositive motions that resolve common issues of law or fact as to the entire class or an identifiable subclass. Defendant can move for summary judgment as to the entire class or a subclass that is defined by a common question of law or fact. Defendant may not, however, move for summary judgment on an individual basis.

*Pendlebury, supra*, at *2.

As such, this Court must deny, or even strike entirely, Bojangles' improper motion for summary judgment as to eight of the 520 Opt-in Plaintiffs.

**2.      Bojangles' motion is substantively inadequate.**

**a.      Plaintiffs can make a prima facie case through their testimony giving their recollection of hours worked.**

Although plaintiffs in an FLSA case bear the burden of proving that they were not paid in accordance with the statutes, in meeting this burden the law makes allowances for the practical realities of the employment relationship. While the plaintiff must show "that he performed work for which he was not properly compensated," "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). "Due regard must be given to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages [and] hours," and courts should likewise note that "employees seldom keep . . . [records of hours worked] themselves," and "even if they do,

12

the records may be and frequently are untrustworthy." *Id.* "Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secure the production of such records' from the employer, who has the duty for their maintenance under' the statute.'" *Santillan v. Henao*, 822 F. Supp. 2d 284, 291 (E.D.N.Y. 2011) (quoting *Anderson*, 328 U.S. at 687) (brackets omitted). When the employer fails to produce complete records in discovery, thereby frustrating this "easiest" of methods, courts often permit plaintiffs to meet their burden "by relying on recollection alone." *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013) ("An employee's burden to produce 'sufficient evidence' is low and can be met by that employee's 'recollection alone.'"); *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 336 (S.D.N.Y. 2005).

Likewise in the Fourth Circuit, a prima facie case can be made through an employee's testimony giving [his] recollection of hours worked ... and [his] case is not to be dismissed nor should recovery be denied, because proof of the number of hours worked is inexact or not perfectly accurate*." McFeeley v. Jackson St. Ent., LLC*, 47 F. Supp. 3d 260, 276 (D. Md. 2014), aff'd, 825 F.3d 235 (4th Cir. 2016) (internal citations and quotations omitted). Indeed, plaintiffs' estimations, offered in sworn statements, are sufficient to show the extent of their overtime work by reasonable and just inference. *See Wirtz v. Durham Sandwich Co*., 367 F.2d 810, 812 (4th Cir. 1966) (affirming damages award in favor of plaintiff when extent of damages were based solely on plaintiff's testimony); *Alston v. DIRECTV, Inc*., 254 F. Supp. 3d 765, 789 (D.S.C. 2017) ("[A]n FLSA plaintiff's estimations offered in sworn statements as to the amount of improperly compensated work is, alone, sufficient to meet his initial burden under the *Mt. Clemens* framework, even if the estimation is imprecise."); *Donovan v. Kentwood Dev. Co*., 549 F. Supp.

480, 485 (D. Md. 1982) ("A prima facie case can be made through an employee's testimony giving his recollection of hours worked.")

To defeat summary judgment, plaintiffs must be able demonstrate "the amount and extent of improperly compensated work as a matter of just and reasonable inference." *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988) (cleaned up). This "does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty." *Id*. at 108. If a jury, "viewing the evidence in [Plaintiffs'] favor, could reasonably infer that [they] routinely worked at least some overtime hours during [their] employment[,]" summary judgment is inappropriate. *Castillo v. Joann Urquhart, M.D., P.C.*, 855 F. App'x 877, 880 (4th Cir. 2021).

Here, many Opt-in Plaintiffs have submitted declarations estimating their overtime hours. Ex. D at Column C[1]. In addition, the declarations of many others demonstrate that they have sufficient facts from which they could easily perform that mathematical calculation, even though they may not have done so explicitly in their declaration. *Id.* And, of course, the deposition testimony filed in support of Plaintiffs' Motion for Partial Summary Judgment and Motion for Rule 23 Certification contains additional evidence that Plaintiffs can make a reasonable estimate of their overtime hours. [ECF Nos. 388-68 through 388-97; 388-104]

In considering whether a reasonable jury could rationally find for Plaintiffs on these facts, it bears noting that Plaintiffs will be presenting representative proof to the jury at trial. LSA cases are customarily tried based on representative proof. See *Donovan v. Bel-Loc Finer*, 780 F.2d 1113, 1116 (4th Cir. 1985) (recognizing that requiring each plaintiff to testify would thwart the purposes of the sort of representational testimony clearly contemplated by *Anderson v. Mt.*

---

[1] Exhibit D is an index of citations to ECF No. 388 inclusive of reference to specific paragraph numbers for each declaration for easy reference by the Court.

*Clemens Pottery Co*., 328 U.S. 680 (1946); *O'Brien v. Ed Donnelly Enter*s., 575 F.3d 567, 585

(6th Cir. 2009) ("Furthermore, it is possible that representative testimony from a subset of

plaintiffs could be used to facilitate the presentation of proof of FLSA violations, when such

proof would ordinarily be individualized."); *Dep't of Labor v. Cole Enters., Inc*., 62 F.3d 775,

781 (6th Cir. 1995) ("The testimony of fairly representative employees may be the basis for an

award of back wages to non-testifying employees."); see also *Morgan v. Family Dollar Stores,*

*Inc*., 551 F.3d 1233, 1276-80 (11th Cir. 2008) (concluding that the general rule is that not all

employees have to testify to prove overtime violations); *Reich v. S.New England Telecomms.*

*Corp*., 121 F.3d 58, 67 (2d Cir. 1997) ("it is well-established that the Secretary may present the

testimony of a representative sample of employees as part of his proof of the prima facie case

under the FLSA"); *Reich v. Gateway Press*, 13 F.3d 685, 701 (3d Cir. 1994) ("not all employees

need to testify in order to prove violations or to recoup back wages"); *Takacs v. Hahn Aut*o.,

1999 WL 33127976, at \*3 (S.D. Ohio June 25, 1999) (granting the plaintiffs' request to prove

damages through representative proof consisting of four to six plaintiffs); *Stillman v. Staples,*

*Inc*., 2009 WL 1437817, at \*18 (D.N.J. May 15, 2009) (explaining that representative testimony

is permitted in FLSA actions).

On summary judgment, if an employer "failed to compensate [employees] properly for

even one hour of overtime, liability is established[,] [and] [a]nything else relates only to

damages." *Estrella v. P.R. Painting Corp*., 356 F. App'x 495, 497 (2d Cir. 2009) (summary

order); see *Arasimowicz*, supra, 948 F. Supp. 2d at 224; *Galleher v. Artisanal, LLC*, 2021

U.S.Dist. LEXIS 12905, \*13 (W.D.N.C., Jan. 25, 2021); *Cardenas v. Edita,s Bar & Rest*., 2020

U.S. Dist. LEXIS 258547, 2021 WL 4480570, at \*12 (E.D.N.Y. Sept. 30, 2021);

*Garcia-Devargas v. Maino*, 2017 U.S. Dist. LEXIS 49516, 2017 WL 11567211, at *2 (S.D.N.Y. Mar. 29, 2017).

Lastly, Bojangles tries to argue that Plaintiffs have given inconsistent statements about the amount of overtime work they performed. However, those inconsistent statements go to credibility, which the Court does not evaluate at the summary judgment stage. *Castillo*, 855 F. App'x at 880. What matters is if, viewing the evidence in Plaintiffs' favor, a jury could reasonably infer that Plaintiffs worked "*at least some*" overtime. *Id.* (emphasis added)

#### b.     Bojangles had at least constructive knowledge that Plaintiffs were working overtime.

To be liable under the FLSA, Defendants must have "knowledge, either actual or constructive, of [the] overtime work." *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). As a result, to prevail on summary judgment, Defendants must show that there is no genuine dispute of material fact that they did not have knowledge, actual or constructive, that each Plaintiff was working unrecorded overtime hours. *Bailey v. Cty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996). An employer has "constructive knowledge" of unpaid overtime "if it should have acquired knowledge of that work through reasonable diligence." *Richardson v. Alliance Residential Co.*, No. ELH-18-1114, 2020 U.S. Dist. LEXIS 17842, 2020 WL 551316, at *9 (D. Md. Feb. 4, 2020) (cleaned up). Knowledge of hours worked may be imputed to the employer when its supervisors or management encourage or require artificially low reporting of hours. *Id.* see also, *Hughes v. NVR, Inc.*, 2022 U.S. Dist. LEXIS 180151 (E.D.V.A., Sept. 30, 2022); *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir.1973) (affirming finding of uncompensated overtime where employees understated overtime because of pressure brought

to bear by immediate supervisors, putting upper management on constructive notice of potential FLSA violations).

In *Brennan*, the district court found that the employer was liable under the FLSA because, although the employer's upper echelon management encouraged accurate timekeeping, the plaintiffs' immediate supervisors directed them to perform off-the-clock work. *Id*. at 827. The employer appealed, arguing that it could not have violated the FLSA because it had no knowledge of the unreported overtime. *Id*. But, the former Fifth Circuit rejected that argument, reasoning that the employer "cannot disclaim knowledge when certain segments of its management squelched truthful responses." *Id*. at 828. The court concluded that "[b]ecause the immediate supervisors were primarily responsible for the employees' failing to report all overtime, . . . they may have had actual knowledge of the unreported overtime." *Id*. at 828. "At the very least, the employer had constructive knowledge, for they had the opportunity to get truthful overtime reports but opted to encourage artificially low reporting instead." *Id*. Accordingly, the court ruled that the district court did not err in finding that the employer had knowledge of the plaintiffs' overtime. *Id*. at 827.

*Richardson, supra*, recognized that other courts have reached the same conclusion, citing *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1321-22 (11th Cir. 2007) (finding genuine issue of fact as to school board's knowledge of unpaid overtime where principal's secretary instructed teachers to sign in at the time they were scheduled to arrive, not the actual time that they arrived); *Kuebel v. Black & Decker*, 643 F.3d 352, 363-64 (2d Cir. 2011) (finding plaintiff raised genuine issue of fact as to employer's knowledge where he testified that supervisors told him not to record more than forty hours of work); *Reich v. Dep't of Conservation & Nat. Res., St. of Ala.*,

28 F.3d 1076, 1083-84 (11th Cir. 1994) (police department had constructive knowledge of overtime where it "specifically instructed its supervisors to closely monitor the officers' hours to ensure compliance with the [department's] policy"); *Meadows v. NCR Corp.*, 2017 U.S. Dist. LEXIS 185801, 2017 WL 5192009, at *9 (N.D. Ill. Nov. 9, 2017) ("Direction or pressure from a supervisor is sufficient here to raise an issue of material fact about [the employer's] constructive knowledge of [the plaintiff's] off-the-clock work."); *Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 868 (S.D. Tex. 2014) (rejecting employer's contention that it lacked constructive knowledge where plaintiff testified that her supervisor instructed her not to report overtime).

Here, nearly every Opt-in Plaintiff has testified or averred that their immediate supervisors (and even upper management) instructed them to work off the clock to avoid overtime. [ECF No. 381-43 at pp. 292-303; Ex. C, Column D and E] And, of course, the deposition testimony filed in support of Plaintiff's Motion for Partial Summary Judgment and Motion for Rule 23 Certification, together with Plaintiffs' discovery responses, contain additional evidence that Plaintiffs were expressly told my their managers to clock out and keep working, work before clocking in, do various errands off the clock, complete training off the clock, attend mandatory meetings off the clock, to under-report their hours and that overtime was not allowed and/or they had a cap on their hours. [ECF No. 388-68 through 388-97 and ECF No. 388-104]

Bojangles also had actual and/or constructive notice, from several sources, that store managers and area directors were working shift managers (and other employees) off the clock. On March 3, 2020, just before this case was filed, Jeannine Eubanks, the Director of HR, was copied on an email sent to an Area Director that expressly stated that a store manager required an

employee to clock out and continue working off the clock. [Ex. E, Exhibit 3 at Workman Depo - Email] Likewise, many Plaintiffs report complaining to store managers, area directors, HR and payroll about working off the clock and/or having their hours shaved. [Ex. D, Column E] Yet, the aforementioned email is the only documentation of any complaint that was produced by Bojangles in this litigation.

One prime example of actual knowledge is the experience of Dawntal Champelle. Her entire employment with Bojangles occurred after this case was filed and Bojangles was on inquiry notice to investigate and stop such unlawful practices. [ECF No. 388-6] Yet, Ms. Champelle, like the other 500-plus Opt-ins, relates the following experiences:

- Before she clocked in for my shift, at least three or four times a week, she would be told that there were too many people on the clock and she should not clock in. But she was told to check the lobby and bathrooms and make sure they were clean. This would take 15- 20 minutes each shift.

- At the end of her shift, she would sometimes have to clock out and keep working if someone did not show up or she had to go pick up an employee for their shift. But she was told not to be on the clock during this time.

- To become a shift manager, she had to watch videos and do a workbook. She was told by the store manager to do it all at home and it took her at least 25  hours to complete.

- She was required to go to other Bojangles locations to pick up product off the clock 2 - 3 times a week.  It would take her 30 minutes to an hour and she was not paid for my time or mileage.

- She was required to come in and do extra cleaning off the clock when corporate was coming into the store. Over the course of a week, she spent 9 hours off the clock, cleaning, walls, ovens, power washing the sidewalk, etc. those stores.

- She also would help out at two other stores and she was not able to clock in and out.

- She was asked to pick up other employees at least 3 times a week and it would take me 30 minutes each time. She was not paid for her time or mileage.

- Her clocked-in hours were cut at least 3 times, totaling 10 hours.

- She complained about this to the store manager who said she would look into it, but Ms. Champelle never heard anything further.

- *The store managers would tell Ms. Champell not to tell anyone she was off the clock.*

All of these events occurred between September 7, 2020 to November 2020, well after this case was filed and Bojangles had constructive, if not actual, notice that many shift managers claimed to be working off the clock and having their hours cut.

In addition, Bojangles was already sued by Shift Managers for the exact same FLSA violations in 2017 in *Sommerville, et al. v. Bojangles' Restaurants, Inc.*, Middle District of North Carolina, Case No. 1:17-CV-565. [ECF No. 387-1] Bojangles used the "lack of awareness" defense in *Sommerville* [ECF No. 387-1], but it cannot use that excuse twice, despite its efforts in this case. [ECF No. 16-1, ¶ 10].

In fact, even beyond constructive and actual notice, many courts hold that *wilfulness* is established if there are prior complaints, lawsuits or investigations. See *Garcia v. Crossmark, Inc.*, 157 F. Supp. 3d 1046, 1054 (D.N.M. 2015) (prior complaints regarding employer policy were well within the range of reasonable evidence to support an inference of knowing or reckless behavior); cf. *Bradley v. Vox Media, In*c., 320 F. Supp. 3d 178, 183-84 (D.D.C. 2018) (holding that the combination of prior knowledge of related litigation and complaints from employees were sufficient to state a claim for willfulness);

Lastly, Bojangles relies exclusively on testimony from Plaintiffs suggesting they themselves do not know if their managers were aware they worked unpaid overtime hours. However, as the district court recognized in *Hughes, supra*, "that does not settle the question of whether [the] managers actually knew that [plaintiff] was working overtime." *Hughes, supra*, at *26. Bojangles must present evidence that Plaintiffs' supervisors actually were unaware

Plaintiffs were working overtime and also that they exercised reasonable diligence and still did not know Plaintiffs were working overtime. This Bojangles has not even attempted to do because it cannot.

### C. Bojangles is not entitled to summary judgment of Plaintiffs' state law claims.

In two brief paragraphs, with no citations to the record, Bojangles attempts to dispose of all Plaintiffs' state law claims. The arguments are cursory and undeveloped. In fact, most of the arguments are so devoid of legal analysis that it is impossible to provide a reasoned response. The gist of arguments seems to be that Plaintiffs' state law claims fail along with their FLSA claims. However, since the FLSA claims survive summary judgment, so must the analogous state law claims.

In addition, the SCPWA is not preempted by the FLSA to the extent that a plaintiff seeks redress for acts prohibited only by the SCPWA. See, *McMurray v. LRJ Rests., Inc.*, 2011 U.S. Dist. LEXIS 7717, 2011 WL 247906, at *2 (refusing to dismiss SCPWA claim as preempted by FLSA where "Plaintiff is . . . seeking redress for Defendants' alleged failure to honor agreements to pay wages which may be in excess of minimum wage and failure to pay wages when due" and noting, said "claims are separate and distinct from Plaintiff's FLSA claims").

The Georgia Class also alleges violations of O.C.G.A. § 34-7-2, which Bojangles does not challenge, so those claims survive summary judgment.

The Tennessee Class can recover under the FLSA for overtime and minimum wage violations. See, *Abadeer v. Tyson Foods, Inc.*, 975 F. Supp. 2d 890, 909-910 (M.D. Tenn. 2013)

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant

Bojangles Restaurant, Inc.'s motion for summary judgment in its entirety.

Respectfully submitted this 28th day of April 2023.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiffs and Putative Class/Collective*