UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-266-MOC

ROBERT E. STAFFORD, JR. on behalf )
of himself and all others similarly    )
situated,                               )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )          **ORDER**
                                        )
BOJANGLES RESTAURANTS, INC.,            )
                                        )
                                        )
                    Defendant.          )
_____     )

**THIS MATTER** comes before the Court on cross motions for summary judgment (Doc.

Nos. 382, 389). For the following reasons, Plaintiffs' Motion for Partial Summary Judgment

(Doc. No. 389) is **DENIED**, and Defendant's Motion for Summary Judgment (Doc. No. 382) is

**GRANTED** in part and **DENIED** in part.

## I.  FACTUAL BACKGROUND

Named Plaintiff Stafford was hired as a crew member at Bojangles in April 2018. (Stafford

Dep. 23:16–17). Defendant subsequently promoted Stafford to shift manager. (Doc. Nos. 383,

396). Named Plaintiff Stafford and members of the opt-in class are current or former hourly-paid

shift managers employed by Bojangles. (Doc. No. 269 ¶ 34). Stafford alleges that during his

employment, he sometimes completed his closing duties while off the clock. (Stafford Dep.

114:5–20). Members of the opt-in class claim that they were likewise required to "perform

compensable work tasks before and after their scheduled shifts, during their unpaid meal periods,

on their way to and from work, and on their days off, when they [were] not clocked into

1

Defendant's timekeeping system." (Doc. No. 269 at 3).[1] Plaintiffs additionally allege that Bojangles "systematically deleted" time worked, especially overtime, from their paid hours. (Doc. No. 269 ¶ 45).

Stafford, a gay man, further alleges that he was reprimanded by a manager for his "mannerisms" and his long acrylic fingernails. (Stafford Dep. 105–07). During his tenure at Bojangles, Stafford claims that he was paid less than other shift managers and regularly passed over for promotions. (Doc. Nos. 296, 396). Plaintiff attributes this differential treatment to his sexuality. (Doc. No. 269 ¶ 71). In early 2020, Stafford was involved in a confrontation with one of his coworkers, and subsequently called out of work on consecutive shifts. (Stafford Dep. 90:18–91:13, 96:2–9).

Stafford's employment with Bojangles terminated in 2020. (Doc. No. 383 at 3). Stafford subsequently filed with the EEOC a discrimination charge against Bojangles, alleging that Bojangles discriminated against him based on his sexual orientation. The EEOC dismissed Stafford's charge, and this lawsuit followed. (Doc. No. 383 at 3).

## II. PROCEDURAL BACKGROUND

In this collective action, employee-Plaintiffs raise wage and hour claims arising under the Fair Labor Standards Act (FLSA) and related state laws against Defendant Bojangles. Named Plaintiff Stafford also raises claims arising under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and North Carolina state law. (Doc. No. 269 ¶¶ 109–25, 195–230).

Stafford filed their first complaint in this Court in May 2020. (Doc. No. 1). Shortly thereafter, Defendants moved to dismiss Plaintiff's complaint for failure to state a claim. (Doc. No. 8). Plaintiff subsequently filed an amended complaint, mooting Defendant's motion to dismiss.

---

[1] The types of tasks Plaintiffs assert they were required to complete off the clock are outlined in Plaintiff's Second Amended Complaint. (Doc. No. 269 ¶ 44).

(Doc. No. 10). Defendant re-filed their FED. R. CIV. P. 12(b)(6) motion, which this Court granted in part and denied in part. (Doc. No. 22). On Plaintiff's motion (Doc. No. 11), and over Defendant's opposition (Doc. No. 16), this Court certified Plaintiff's class. (Doc. No. 27).

Following discovery, Defendant moved to dismiss certain named and opt-in Plaintiffs pursuant to FED. R. CIV. P. 37 and 41. (Doc. No. 347). The Court granted Defendant's motion over Plaintiff's opposition (Doc. No. 354) and dismissed some twenty Plaintiffs with prejudice. (Doc. No. 358). Plaintiff filed a motion for reconsideration (Doc. No. 374) which this Court denied. (Doc. No. 407).

There are now four motions pending in this case. Defendant has moved to decertify the collective action (Doc. No. 380) and for summary judgment. (Doc. No. 382). Plaintiff has moved to certify several more state-specific classes (Doc. No. 385) and for partial summary judgment on Plaintiff's FLSA claim. (Doc. No. 389). This Order addresses the summary judgment motions only. Defendant's motion to decertify and Plaintiff's motion for additional certification will be addressed separately.

Plaintiffs filed their motion for partial summary judgment on March 4, 2023. (Doc. No. 389). Defendant filed its response in opposition on April 28. (Doc. No. 395). Plaintiffs filed a reply to Defendant's response on May 19. (Doc. No. 404).

Defendant filed its motion for summary judgment on March 31, 2023. (Doc. No. 382). Plaintiff filed a response in opposition on April 28. (Doc. No. 396). Defendant filed a reply to Plaintiff's response on May 19. (Doc. No. 402).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides the standard against which motions for summary judgment are assessed. Summary judgment is granted "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 538 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

4

## IV. DISCUSSION

First, the Court addresses Plaintiffs' relatively narrow motion for partial summary judgment. (Doc. No. 389). Because Plaintiffs' motion fails to resolve genuine disputes of material fact that could lead a reasonable jury to deny Plaintiffs' FLSA claim, Plaintiffs' motion for partial summary judgment will be denied.

Next, the Court considers Defendant's motion for summary judgment. (Doc. No. 380). Because Defendant fails to resolve genuine disputes of material fact that could lead a reasonable jury to grant relief on Plaintiffs' FLSA, disparate discipline, wage discrimination, and North Carolina wrongful discharge claims, Defendant's motion will be denied with respect to those claims. But because Defendant is entitled to judgment against Plaintiff Stafford's Equal Pay Act claim, discriminatory discharge claim, failure to promote claim, and some additional state law claims as a matter of law, Defendant's motion will be granted with respect to those claims. Because neither party has had the opportunity to be heard at length on the remaining state law claims of the putative state classes, the Court declines to grant summary judgment on those remaining state law claims. Defendant may renew its arguments against the remaining state law claims at trial.

### a. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment holding Defendant liable for purported FLSA violations. To prevail on summary judgment, Plaintiffs must demonstrate that no reasonable jury could find that Defendant's conduct did not violate the FLSA. Plaintiffs bear the burden to show the absence of any genuine dispute of material fact bearing on their FLSA claims.

"In the Fourth Circuit, an employee who seeks to recover on an FLSA uncompensated

overtime claim must prove: (1) that he or she worked overtime hours without compensation, showing the amount and extent of his or her overtime work as a matter of just and reasonable inference; and (2) that his or her employer suffered or permitted the uncompensated overtime work, that is, that the employer had actual or constructive knowledge of the employee's overtime work." Galleher v. Artisanal, LLC, No. 1:19-CV-55-MOC-WCM, 2021 WL 243868, at *5 (W.D.N.C. Jan. 25, 2021) (citing Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986)). Plaintiffs contend that uncontroverted proof of even one hour of unpaid overtime by one member of the class is sufficient to establish Defendant's liability on a motion for partial summary judgment. (Doc. No. 390). Defendant raises several objections to Plaintiffs' novel "one hour by one plaintiff" standard for collective-wide liability. (Doc. No. 395 at 8). While Defendant's objections have merit, the Court's analysis will proceed under Plaintiffs' proposed theory for the sake of argument.[2] According to Plaintiffs' theory, Plaintiffs are entitled to partial summary judgment if they can show that there is no genuine issue of material fact as to whether any Plaintiff worked any overtime that Defendant Bojangles knowingly failed to compensate.

Plaintiffs fail to meet their burden. The opt-in declarations and deposition excerpts identified in Plaintiff's motion may "detail[] the uncompensated hours, including overtime hours, they worked for Bojangles . . . with Bojangles' actual and/or constructive knowledge." (Doc. No. 389). But these documents show the existence of a genuine dispute of material fact, not such dispute's absence. Likewise, Bojangles' contention that "its timekeeping records do not reflect any 'off the clock' work or 'shaved hours'" is not an "admission" that favors Plaintiffs (see Doc.

---

[2] The Court accepts for the sake of argument that (1) Plaintiffs are similarly situated and (2) Plaintiffs' evidence is "fairly representative" of the collective. These assumptions are limited to the Court's analysis of Plaintiffs' motion for summary judgment without prejudice to the Court's forthcoming order on Defendant's decertification motion. The Court adopts these assumptions because—as Defendant recognizes—Plaintiffs' motion fares no better under their theory than under Defendant's. (Doc. No. 395 at 8). Under either approach, the result is the same.

6

No. 269 at 9 (quoting Doc. No. 272 ¶ 49)) but further evidence of a genuine dispute as to the material fact of whether Plaintiffs worked any unpaid overtime at all.

Plaintiffs cite voluminous records supporting their claim that members of the opt-in class were not fairly compensated for their labor. But Plaintiffs fail to show—and they bear the burden to show—that there is no genuine dispute of material fact as to the veracity of their claims. It is not this court's job "to wade through the record and make arguments for either party." (Friedel v. City of Madison, 832 F.2d 965, 969 (7th Cir. 1987) (quoted in Hensley ex rel. N. Carolina v. Price, 876 F.3d 573, 581 n.5 (4th Cir. 2017)). "[C]ourts are not like pigs, hunting for truffles buried in briefs or in the voluminous record." Zurich Am. Ins. Co. v. Covil Corp., No. 1:18-cv-932, 2020 WL 13550202, at *1 (M.D.N.C. May 11, 2020).

Nonetheless, Plaintiffs maintain their entitlement to summary judgment on the basis that Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) shifts the burden to Defendant to produce evidence rebutting Plaintiffs' claims. According to Mt. Clemens,

> where the employer's records are inaccurate or inadequate, an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

Id. 687–88. But even assuming Plaintiffs carried their initial burden under Mt. Clemens, it does not follow that Defendant must now "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence" to survive Plaintiffs' motion for summary judgment. Id. Instead, Defendant need only establish a genuine issue as to the material fact of whether their records rebut Plaintiffs' claims or undermine the reasonableness of inferences drawn from Plaintiffs'

7

testimony. Defendant does so with ease: considering the evidence in the light most favorable to Bojangles, Liberty Lobby, 477 U.S. at 255, "Bojangles' time and pay records negate the reasonableness of Plaintiffs' . . . estimates of the uncompensated time they worked." (Doc. No. 395 at 16, see Goldberg Rep. ¶¶ 63–66).

Defendant is correct: "[t]he contradictions between Plaintiffs' declaration statements and Bojangles' pay and time records . . . . create genuine issues of material fact." (Doc. No. 395 at 18). This is all that Defendant must do to survive Plaintiffs' motion for partial summary judgment. Having established a genuine dispute of material fact with respect to the first prong of the FLSA analysis (i.e., that Plaintiffs worked overtime hours without compensation), the Court need not proceed to the second prong (i.e., Bojangles' actual or constructive knowledge of employees' overtime work). Because Defendant has established genuine issues of material fact that Plaintiffs have not resolved, Plaintiffs' motion for partial summary judgment will be denied.

### b. Defendant's Motion for Summary Judgment

### i. Plaintiff Stafford's Title VII Claims

Stafford raises four claims under Title VII: disparate pay, discriminatory termination, disparate discipline, and failure to promote. (Doc. No. 269 ¶¶ 197–200). Defendant addresses Plaintiff's disparate discipline and discriminatory termination claims together. (Doc. No. 383 at 10).[3] Plaintiff maintains that material factual disputes prevent this Court from granting summary

---

[3] Plaintiff argues that Bojangles' summary judgment motion fails to address Stafford's discriminatory discharge claim. (Doc. No. 396 at 5–6). That is incorrect. See (Doc. No. 402 at 5–6 (citing Doc. No. 383 at 10–12)). Bojangles' summary judgment motion simply treats Stafford's discriminatory discharge and disparate discipline claims as one and the same. Plaintiff's complaint is hardly a paragon of clarity and does not clearly identify the specific claims Stafford asserts under Title VII. (Doc. No. 269 ¶ 203). Nevertheless, Bojangles specifically analyzes Plaintiff's discriminatory discharge claim in Defendant's Reply Memorandum. (Doc. No. 402 at 5–6). The Court analyzes each of Plaintiff's potential Title VII claims separately for maximal clarity.

judgment against Plaintiff's Title VII claim. (Doc. No. 396).

Title VII forbids employment practices that discriminate against an employee based on sex. Strothers v. City of Laurel, Md., 895 F.3d 317, 327 (4th Cir. 2018) (citing 42 U.S.C. § 2000e-2). Title VII also prohibits discrimination based on sexual orientation. Bostock v. Clayton Cnty., Ga., 140 S. Ct. 1731, 1737 (2020). A plaintiff can establish that an employer acted with discriminatory intent by direct evidence or via the McDonnell Douglas burden shifting framework. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Even absent direct evidence of discrimination, a plaintiff's Title VII claim can survive summary judgment if the plaintiff raises a genuine issue of material fact under the McDonnell Douglas framework.

Plaintiff argues that the Court should apply a "mixed motive" analysis to their Title VII claims. (Doc. No. 396 at 5–6). Under such an analysis, the Court applies the McDonnell Douglas framework only if the plaintiff cannot show that their sexual orientation was a motivating factor in the imposition of adverse employment consequences. See Desert Palace v. Costa, 539 U.S. 90, 96 (2003). Defendant highlights the absence of a genuine dispute of material fact as to whether Plaintiff's sexual orientation played any role in motivating the adverse employment consequences he suffered. (Doc. No. 402 at 8). But even assuming Plaintiff failed to show that his sexual orientation was a motivating factor in the imposition of adverse employment consequences, two Plaintiff's Title VII claims survive summary judgment under the more demanding McDonnell Douglas framework.[4]

---

[4] The two Title VII claim that do fail under the McDonnell Douglas framework (failure to promote and discriminatory discharge) would also fail under the mixed-motive framework. No matter the standard, Plaintiff cannot prevail on a failure to promote claim because they never applied for the position in question. See Harrison v. S.C. Dep't of Mental Health, 641 F. App'x 202, 206 (4th Cir. 2015). Likewise, Plaintiff cannot prevail on their discriminatory discharge

9

Under the <u>McDonnell Douglas</u> framework, "a plaintiff must first establish a prima facie case of discrimination." <u>Ramseur v. Concentrix CVG Customer Mgmt. Grp. Inc.</u>, 467 F. Supp. 3d 316, 323 (W.D.N.C. 2020), <u>aff'd</u>, 837 F. App'x 204 (4th Cir. 2021). "If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action 'for a legitimate, nondiscriminatory reason.'" <u>Id</u>. (citing <u>Texas Dept. Comm. Aff. v. Burdine</u>, 45 U.S. 248, 254 (1981)). "If the defendant offers admissible evidence sufficient to meet its burden of production, 'the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination.'" <u>Id</u>. (citing <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (quotation omitted)).

To establish a *prima facie* Title VII claim for disparate pay or discriminatory termination, "[t]he plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 214 (4th Cir. 2007) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802).

Plaintiff satisfies the first element of his *prima facie* case: as a gay man, Plaintiff belongs to a protected class. To satisfy the second element, Plaintiff must show that he "was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action." <u>Giles</u>, 59 F.4th at 704 (citing <u>Hill</u>, 354 F.3d at 285 (4th Cir. 2004)). "'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." <u>Evans v. Techs. Apps. & Serv. Co.</u>, 80 F.3d 954, 960–61 (4th Cir. 1996) (quoting

---

claim because they failed to plead that after Stafford was fired "the position remained open to or was filled by similarly qualified applicants outside the protected class." <u>Jones v. Southcorr, L.L.C.</u>, 324 F. Supp. 2d 765, 780–81 (M.D.N.C.), <u>aff'd sub nom.</u> <u>Jones v. Southcorr</u>, LLC, 117 F. App'x 291 (4th Cir. 2004).

10

Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980)).

To state the third element of his *prima facie* case, Plaintiff must show that he suffered an adverse employment action. Plaintiff's putative termination and disparate pay by Bojangles constitute an "adverse employment action."[5]

Finally, to satisfy the fourth element of his *prima facie* case, "[a]bsent unusual evidence of overt animus, a plaintiff seeking to prove unlawful discrimination in employment will generally need to produce evidence of comparators, or similarly-situated employees of a different . . . sex[ual orientation] . . . who have been treated differently." Netter v. Barnes, 908 F.3d 932, 939 (4th Cir. 2018).

Once a plaintiff makes out a *prima facie* case of employment discrimination under the McDonnell Douglas framework, the burden shifts to the employer, who must offer a nondiscriminatory explanation for the adverse employment action. Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216–17 (4th Cir. 2016); EEOC v. Maryland Ins. Admin., 879 F.3d 114, 120 n.7 (4th Cir. 2018). If the defendant employer does so, then the burden shifts back to the plaintiff to show that the employer's explanation is pretext for invidious discrimination. Guessous, 828 F.3d at 216–17.

### 1. Disparate Pay

Plaintiff's *prima facie* case of disparate pay is based on comparators. Bojangles' summary judgment motion focuses on the inadequacy of Plaintiff's comparators. Defendant's focus is well-placed: a plaintiff's failure to identify a valid comparator requires the court to grant summary judgment against that plaintiff's disparate pay claim. Hurst v. D.C., 681 F. App'x 186,

---

[5] Defendant maintains that Stafford quit voluntarily, but "[g]iven the standard of review applicable to the motion for summary judgment, Bojangles accepts for the purpose of its analysis that Stafford was terminated." (Doc. No. 402 at 5 n.2).

187 (4th Cir. 2017). Consequently, to survive summary judgment Plaintiff must show that he was paid less than heterosexuals employed by Bojangles in similar jobs. See Spencer v. Virginia State Univ., 919 F.3d 199, 207 (4th Cir. 2019), as amended (Mar. 26, 2019) (citing Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994)).

Title VII requires that comparators' jobs be "similar" to that of the plaintiff. "While there is no bright-line rule for what makes two jobs 'similar' under Title VII, courts consider 'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications.' Bio v. Fed. Express Corp., 424 F.3d 593, 597 (7th Cir. 2005)." Spencer, 919 F.3d at 207, quoted in Lee v. Belvac Prod. Mach., Inc., No. 20-1805, 2022 WL 4996507, at *2 (4th Cir. Oct. 4, 2022).

Defendant, as movant on summary judgment, has the burden to show that Plaintiff has failed to identify valid comparators. Bojangles fails to carry this burden. To be considered similarly situated, Stafford must have "comparable" but not identical "experience, education, and other qualifications" to his comparators. Spencer, 919 F.3d at 207. Stafford's expertise and education are comparable to his comparators'. Defendant claims that all five of Stafford's comparators—unlike Stafford—have post-secondary education, management experience, or both. (Doc. No. 383 at 8). But two of Stafford's comparators (Heavenny Timms and Tiffany Couick), like Stafford, have neither management experience nor an undergraduate degree. (Cunningham Dec. ¶¶ 8, 10). Timms apparently completed some undergraduate work, and Couick has a certification in Medical Office Administration. Id. Neither qualification is sufficient to distinguish Timms' or Couick's education from Stafford's. Stafford thus identifies at least two appropriate comparators and states a *prima facie* case of wage discrimination under the

<u>McDonnell Douglas</u> framework.

Defendant's nondiscriminatory explanation for Stafford's wage rate simply re-hashes purported distinctions between Stafford and his comparators. (Doc. No. 383 at 8–9) ("Stafford's relative lack of experience and education also evidences Bojangles' legitimate, nondiscriminatory reason for his wage rate."). A reasonable jury could find—as did the Court above—that Stafford's education was in fact comparable to that of Timms and Couick. It is not immediately obvious that an undergraduate student, or someone with a certificate in medical office administration, is necessarily better qualified to be a Bojangles shift manager than someone with a high school education. The Court finds that Bojangles has failed to offer a satisfactory nondiscriminatory explanation for Stafford's wage rate. Consequently, the burden does not shift back to Stafford under the <u>McDonnell Douglas</u> framework. Defendant's summary judgment motion with respect to Plaintiff's Title VII disparate pay claim will be denied.

### 2. Discriminatory Discharge

To the extent that Stafford's discharge was a form of discipline, Plaintiff fails to state a *prima facie* case for the reasons articulated in the "disparate discipline" section below. To the extent that Stafford pleads a discrete discriminatory discharge claim under Title VII, he likewise fails to state a *prima facie* case. "[T]o establish a prima facie case of discriminatory discharge, Plaintiff must show the following four elements: "(1) that [he] is a member of a protected class; (2) that [he] suffered an adverse employment action; (3) that at the time of the adverse employment action [he] was performing at a level that met [his] employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class." <u>Jones v. Southcorr, L.L.C.</u>, 324 F. Supp. 2d 765, 780–81 (M.D.N.C.), <u>aff'd sub nom.</u> <u>Jones v. Southcorr</u>, LLC, 117 F. App'x 291 (4th Cir. 2004).

Plaintiff has failed to show that his "position remained open to or was filled by similarly qualified applicants outside of the protected class." Id. Consequently, Defendant's summary judgment motion on Plaintiff's discriminatory discharge claim will be granted.

### 3. Disparate Discipline

To establish a *prima facie* case of disparate discipline under Title VII, Stafford must show "(1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." Ramseur, 467 F. Supp. 3d 316, 324 (citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)); Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985). "To show that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, a plaintiff must not only prove that others similarly violated the employer's rules, but also that the violation or the acts of the employees in question were of 'comparable seriousness.'" Gary, 394 F. Supp. 2d at 778 (quoting McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 (1976) and citing Cook, 988 F.2d at 511; Moore, 754 F.2d at 1107). "[T]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008), quoted in Sook Yoon v. Sebelius, 481 F. App'x 848, 850 (4th Cir. 2012).

To establish a *prima facie* case of disparate discipline, Stafford must show that he and his comparator employees were "similarly situated." Burdine, 450 U.S. at 258. On summary judgment, Defendant-movant bears the burden to prove that Plaintiff has failed to make such a showing. Plaintiff's "showing typically includes evidence that the employees 'dealt with the

14

same supervisor, ... [were] subject to the same standards[,] and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct.'" Hurst, 681 F. App'x at 191 (quoting Toledo Hosp., 964 F.2d at 583). But "[t]he most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Moore, 754 F.2d at 1105. Plaintiff's failure to "identify a similarly-situated colleague who was treated differently" is a failure to establish a *prima facie* case of disparate discipline and would require this Court to grant Defendant's summary judgment motion. Sook Yoon, 481 F. App'x at 850.

The McDonnell Douglas burden-shifting framework applies to disparate discipline claims as it does disparate pay and discriminatory discharge claims. After the plaintiff makes out their *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the treatment in question." Gary, 394 F. Supp. 2d at 778; see Hurst, 681 F. App'x at 190–91. If the employer carries this burden, then the employee must "demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination." Cook, 988 F.2d at 511.

Stafford proposes one comparator, Autumn Marsh, to support his disparate discipline claim. (Doc. No. 383 at 11).[6] To state a *prima facie* case of disparate discipline, Stafford must show that the conduct for which he was punished was comparable in seriousness to that of

---

[6] Plaintiff does offer a text message from Jennifer Alimo to Stafford suggesting that other employees were not fired for conduct like Stafford's. (Doc. No. 396 at 8). But Defendant correctly notes that this text message constitutes inadmissible hearsay which this Court cannot consider at the summary judgment stage. (Doc. No. 407 at 7). Regardless, the Alimo message does not identify any specific comparator, nor does it show that such comparator was similarly situated to Stafford. Even if it were admissible, the Alimo message would not help Plaintiff establish a *prima facie* disparate discipline claim.

15

Autumn Marsh, and that the disciplinary measures enforced against Plaintiff were more serious than those enforced against Ms. Marsh. See Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985). Plaintiff carries this burden. Like Stafford, Marsh called out from work for medical reasons. (Doc. No. 383 at 11 (citing Stafford Dep. 98:15–18)). Whereas Marsh was not disciplined at all, Stafford was dismissed. Plaintiff has identified a "similarly-situated colleague who was treated differently[.]" Sook Yoon, 481 F. App'x at 850.

Defendant maintains that Plaintiff and Ms. Marsh were not similarly situated. (Doc. No. 383 at 11–12). True, Ms. Marsh only called out once compared to Stafford's multiple absences, and Ms. Marsh was not involved in an altercation with a co-worker before being terminated. Id. But at the summary judgment stage, construing all facts in the light most favorable to the non-movant Plaintiff, the Court concludes that a reasonable jury could find that Stafford and Marsh were similarly situated.

Bojangles raises Stafford's absences as a legitimate, nondiscriminatory reason for his discharge. But Stafford provides sufficient evidence to undermine Bojangles' purported justification for his termination by highlighting apparently discriminatory remarks made by certain supervisors. (Stafford Dep. 105–07); (Doc. No. 269 ¶ 71); see Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 728–31 (4th Cir. 2019). Thus, even if the Plaintiff ultimately bears the burden to show pretext under the McDonnell Douglas framework, a reasonable jury could find that Plaintiff carried their burden. Defendant's summary judgment motion with respect to Plaintiff's disparate discipline claim will be denied.

### 4.  Failure to Promote

To establish a *prima facie* case of failure to promote, Plaintiff must establish that he (1) applied and (2) was qualified for the position in question, but (3) was rejected "under

circumstances giving rise to an inference of unlawful discrimination." Honor, 383 F.3d at 189

(citing Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995)). Defendant

may then rebut Plaintiff's *prima facie* case by showing that the person they did promote was

better-qualified for the position than Plaintiff. Id. If Defendant carries this burden, Plaintiff can

respond by showing that Bojangles' stated reason for promoting the successful applicant was

pretextual. Id. To demonstrate pretext on a failure to promote claim, Plaintiff must "show[] that

his qualifications [were] demonstrably superior" to the employee ultimately promoted, not that

Plaintiff's qualifications were merely "similar or only slightly superior." Matias v. Elon Univ.,

780 F. App'x 28, 31 (4th Cir. 2019) (quoting Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249,

261-62 (4th Cir. 2006)).

To state a *prima facie* failure to promote claim under Title VII, the plaintiff must have

applied or attempted to apply for the position in question. The plaintiff's failure to do so "is

enough to defeat their claim[] as a matter of law." Harrison v. S.C. Dep't of Mental Health, 641

F. App'x 202, 206 (4th Cir. 2015) (citing Evans, 80 F.3d at 959).

Because Stafford never applied or attempted to apply for a higher-level position after his

promotion to shift manager, Plaintiff fails to state a *prima facie* case for failure to promote.

Defendant raised Stafford's failure to apply for a position in its summary judgment motion.

(Doc. No. 383 at 12). Plaintiff's response failed to create a genuine issue of material fact as to

whether Stafford could satisfy this element of his *prima facie* failure to promote case.

Consequently, Defendant's summary judgment motion with respect to Plaintiff's failure to

promote claim will be granted.

### ii.  Plaintiff Stafford's North Carolina Wrongful Discharge Claim

North Carolina courts assess state law wrongful discharge claims under the same

evidentiary standards as Title VII cases. N.C. Dep't of Corr. v. Gibson, 308 N.C. 131, 141

(1983). Thus, if a non-movant on summary judgment establishes a genuine issue of material fact

with respect to their Title VII claims, their North Carolina wrongful discharge claim also

survives summary judgment. Because two of Plaintiff's Title VII claims survive summary

judgment, Defendant's summary judgment motion against Plaintiff's North Carolina wrongful

discharge claim will be denied.

### iii. Plaintiff Stafford's Equal Pay Act Claim

The Equal Pay Act (EPA) prohibits employers from discriminating

> between employees on the basis of sex by paying wages to employees . . . at a
> rate less than the rate at which he pays wages to employees of the opposite sex . . .
> for equal work on jobs the performance of which requires equal skill, effort, and
> responsibility, and which are performed under similar working conditions[.]

29 U.S.C. § 206(d)(1). The EPA plainly prohibits discrimination "on the basis of sex." Id.

(emphasis added). To establish a *prima facie* EPA claim, the plaintiff must show that they

received lower pay than a co-employee of the opposite sex for performing work "substantially

equal in skill, effort, and responsibility under similar working conditions." Strag v. Bd. of

Trustees, Craven Cmty. Coll., 55 F.3d 943, 948 (4th Cir. 1995). Once the plaintiff has

established their *prima facie* case, the burden shifts to the defendant to show that the pay

differential is justified by one of the exceptions to EPA liability outlined at 29 U.S.C. §

206(d)(1)(i)–(iv). Id.

Defendant's summary judgment motion alleges that Stafford fails to state a *prima* facie

EPA case. (Doc. No. 383 at 14–15). Defendant is correct. Stafford's pleadings are devoid of any

claim that Bojangles discriminated against him "on the basis of sex." See 29 U.S.C. § 206(d)(1).

Instead, Stafford alleges

Defendant violated the EPA by providing Plaintiff with lower pay than similarly

18

> situated heterosexual employees . . . <u>on the basis [of] his sexual orientation</u>, even though Plaintiff had more seniority and performed similar duties requiring the same skill, effort, qualifications, and responsibility as his heterosexual counterparts.

(Doc. No. 296 ¶ 224) (emphasis added). Stafford's claim regarding sexual orientation discrimination is not cognizable under the EPA. Defendant's summary judgment motion raised this defect in Stafford's *prima facie* EPA case. But Plaintiff's response ignores the issue entirely, skipping to the second prong of the EPA analysis and averring that the alleged pay differential is not justified by a statutory exception to EPA liability. (Doc. No. 396 at 10–11). Plaintiff thus fails to establish a genuine issue of material fact as to whether Bojangles discriminated against Stafford based on sex (as opposed to sexual orientation). Stafford consequently fails to articulate a *prima facie* EPA claim. Because Plaintiff fails to establish a *prima facie* EPA claim, the burden does not shift to Defendant to justify the purported pay differential under the exceptions to EPA liability at 29 U.S.C. § 206(d)(1)(i)–(iv). Defendant is entitled to judgment against Plaintiff's EPA claim as a matter of law. Thus, the Court will grant Defendant's motion for summary judgment as to Plaintiff's EPA claim.

### iv. Plaintiffs' FLSA (Wage and Hour) Claims

The Fourth Circuit held in <u>Davis v. Food Lion</u> that "to establish a claim for unpaid overtime wages, an employee must establish, by a preponderance of the evidence, (1) that [they] worked overtime hours without compensation, (2) the 'amount and extent of [their] overtime work as a matter of just and reasonable inference,' and (3) that [their] employer knew or should have known that [they] worked overtime." <u>Castillo v. Joann Urquhart, M.D., P.C.</u>, 855 F. App'x 877, 879–80 (4th Cir. 2021) (citing <u>Davis v. Food Lion</u>, 792 F.2d 1274, 1276 (4th Cir. 1986). "When bringing suit under the FLSA, the employee has the initial burden of proving that she was improperly compensated. <u>See</u> <u>Anderson v. Mt. Clemens Pottery, Co.</u>, 328 U.S. 680, 687 (1946),

19

superseded by statute on other grounds." McFeeley v. Jackson St. Entm't, LLC, 47 F. Supp. 3d

260, 276 (D. Md. 2014), aff'd, 825 F.3d 235 (4th Cir. 2016). Defendant's summary judgment

motion alleges that Plaintiff fails to establish a genuine dispute of material fact as to each of the

Davis factors.

      Plaintiff's burden to establish factual disputes with respect to the first two Davis prongs is

a light one. "'A prima facie case can be made through an employee's testimony giving [her]

recollection of hours worked ... [and her case] is not to be dismissed nor should recovery be

denied, because proof of the number of hours worked is inexact or not perfectly accurate.'

Donovan v. Kentwood Dev. Co. 549 F. Supp. 480, 485 (D. Md. 1982)." McFeeley, 47 F. Supp.

3d at 276. Moreover, "[w]hen employment records are inaccurate or inadequate and the

employee cannot offer convincing substitutes, the court 'is not to penalize the employee by

denying him recovery on the ground that he is unable to prove the precise extent of

uncompensated work.'" Id. (citing Donovan, 549 F. Supp. at 485). Nevertheless, to survive

summary judgment, a non-movant plaintiff must show "the amount and extent of improperly

compensated work as a matter of just and reasonable inference." Pforr v. Food Lion, Inc., 851

F.2d 106, 108 (4th Cir. 1988) (cleaned up). Plaintiffs may use "estimates and approximations" to

carry this burden. Castillo, 855 F. App'x at 880 (citing Pforr, 851 F.2d at 107–09).

      Here, the parties dispute the weight and specificity of evidence Plaintiff must produce to

create a genuine dispute as to the material facts of whether and how much Plaintiffs worked

uncompensated overtime. In light of the overarching standard articulated in Anderson, 477 U.S.

at 248 (a factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party"), the Callisto court's approach to summary judgment motions

on FLSA claims seems most appropriate. There, the Court held that where a jury viewing the

evidence in favor of the non-movant plaintiff could "reasonably infer" that the plaintiff "routinely worked at least <u>some</u> uncompensated overtime hours," summary judgment for the defendant-movant employer would be inappropriate. <u>Castillo</u>, 855 F. App'x at 880 (emphasis added).

Named and opt-in Plaintiffs have submitted sworn declarations claiming that they routinely completed certain tasks before or after clocking in. (Doc. No. 396 at 14 (citing Doc. No. 388)). Viewing this evidence in the light most favorable to Plaintiffs, a jury could "reasonably infer" that Plaintiffs "routinely worked at least some uncompensated overtime hours[.]" <u>Castillo</u>, 855 F. App'x at 880. Plaintiffs' sworn declarations are not "mere allegations or denials" and may be credited at the summary judgment stage. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 324 (1986) (internal citations omitted). In line with the Fourth Circuit's holding in <u>Mt. Clemens,</u> as discussed previously, the practice of district courts in the Fourth Circuit is to permit sworn statements alone to satisfy the plaintiff's initial burden. <u>Alston v. DIRECTV, Inc.</u>, 254 F. Supp 3d 765, 789 n.12 (D.S.C. 2017).[7]

Defendant invokes several Fourth Circuit cases affirming the granting of summary judgment for employers where employees failed to adduce sufficient evidence of unpaid overtime. (Doc. No. 383 at 17–19). But those cases can be distinguished from the facts at hand. In <u>Lee v. Vance Exec. Prot., Inc.</u>, 7 F. App'x 160, 166 (4th Cir. 2001), the Fourth Circuit affirmed a grant of summary judgment where the record was "bereft of evidence showing the amount or extent" of alleged unpaid overtime. Here, some of Plaintiffs' declarations explicitly

---

[7] "[T]o the extent the authorities Defendants cite stand for the proposition that in order to meet the initial burden imposed on an FLSA plaintiff by <u>Mt. Clemens</u>, the plaintiff's sworn statement (a) must be so specific as to rise above the level needed for reasonable estimation or (b) must be accompanied by other substantiating evidence, this court does not agree." <u>Alston</u>, 254 F. Supp. 3d at 789 n.12.

estimate the amount of time they worked on certain uncompensated tasks. (See, e.g., Doc. No. 388-14 ¶¶ 16–21; Doc. No. 388-15 ¶¶ 10–11, 15–17; Doc. No. 388-17 ¶¶ 5–8; Doc. No. 388-41 ¶ 6; Doc. No. 388-67 ¶¶ 3–5).

Defendant additionally points to Buckner v. United Parcel Serv., Inc., No. 5:09-CV-411-BR, 2012 WL 1596726, at *7 (E.D.N.C. May 7, 2012), aff'd, 489 F. App'x 709 (4th Cir. 2012) for the proposition that "generalized assertions that a plaintiff worked off the clock at indeterminate times—not tied to a specific workday or even workweek—or was otherwise undercompensated, lacking any corroborating documentation, do not suffice to survive summary judgment." (Doc. No. 383 at 18). But Defendant's analogy to Buckner is inapposite. In that case, the plaintiff failed "to identify any work week where he did not receive at least one and one-half times his regular rate of pay for all of the overtime hours that he claims to have worked." Buckner, No. 5:09-CV-411-BR, 2012 WL 1596726, at *7. Here, Plaintiffs allege that Bojangles had an unwritten policy requiring Plaintiffs to routinely complete certain overtime tasks without compensation. (Doc. No. 403 at 4). Taking the facts in the light most favorable to the Plaintiffs, any week in which a Plaintiff worked at least 40 hours is a week in which Plaintiff is entitled to recovery for uncompensated overtime, because Plaintiffs were required to complete certain tasks while clocked out on a weekly basis.

With respect to the third element of Plaintiffs' FLSA claim, Defendant has the burden to prove that there is no dispute as to Bojangles' knowledge of Plaintiffs' uncompensated overtime. Bailey v. Cnty. of Georgetown, 94 F.3d 152, 157 (4th Cir. 1996). Named and opt-in Plaintiffs have submitted sworn declarations claiming that supervisors instructed them to work off the clock. (Doc. No. 396 at 18 (citing Doc. Nos. 381, 388). Plaintiff also cites an email received by Bojangles' director of Human Resources indicating that a manager instructed an employee to

22

work off the clock. (Doc. No. 396, Ex. E). Viewing this evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Defendant knew that Plaintiffs were working uncompensated overtime hours.

Defendant argues that Plaintiffs' inconsistent statements regarding Bojangles' knowledge entitles Bojangles to judgment as a matter of law. (Doc. No. 383 at 20–21). But "[c]redibility determinations . . . are jury functions, not those of a [court] . . . ruling on a motion for summary judgment." Castillo, 855 F. App'x at 880 (quoting Anderson, 477 U.S. at 255). The same goes for Defendant's references to Plaintiffs' inconsistent estimates of off-the-clock overtime. Plaintiffs' testimony may, indeed, suffer from fatal credibility issues. But that is a question for the jury. At this stage, and in light of scores of sworn declarations, it is inappropriate to conclude that "no reasonable juror could find" that Plaintiffs are entitled to FLSA relief. (See Doc. No. 383 at 24).

Because Plaintiffs' sworn declarations establish a genuine issue as to the material facts of whether and how much Plaintiffs worked uncompensated overtime with Bojangles' knowledge, Defendant's motion for summary judgment on Plaintiffs' FLSA claims will be denied.

### v. Plaintiffs' Tennessee State Law Claims

At least one Plaintiff raises state law claims under the Tennessee Wage Regulations Act (TWRA). (Doc. No. 269 ¶ 175–84). Defendant's summary judgment motion correctly notes that the TWRA explicitly disclaims any private right of action. TENN. CODE ANN. § 50-2-103(i) ("It shall be at the sole discretion of the commissioner to elect to proceed either civilly or criminally upon any violation of this part; however, the employer shall not be charged both civilly and criminally for the same violation."). Plaintiffs "respond" that "[t]he Tennessee Class can recover under the FLSA for overtime and minimum wage violations." (Doc. No. 396 at 21). Maybe so. But that argument is not responsive to the defect raised by Defendant—that the state law under

23

which Plaintiffs sue does not create a viable cause of action. The very case Plaintiffs cite for the proposition that the Tennessee class can recover under the FLSA held that the TWRA "does not—and never did—include a private right of action." Abadeer v. Tyson Foods, Inc., 975 F. Supp. 2d 890, 919 (M.D. Tenn. 2013). Plaintiffs do not rebut Defendant's contention that the TWRA lacks a private right of action.

Because Plaintiffs do not raise a genuine dispute of material fact that would entitle them to relief under the TWRA, Defendant is entitled to judgment against Plaintiffs' TWRA claims as a matter of law. Defendant's motion for summary judgment against Plaintiffs' Tennessee state law claims will be granted.

### vi. Plaintiffs' Georgia State Law Claims

The Georgia Plaintiffs seek relief under the Georgia Minimum Wage Law (GMWL), GA. CODE ANN. § 34-4-3. (Doc. No. 269 ¶ 164–68). Defendant's summary judgment motion correctly notes that the GMWL is inapplicable because relevant Plaintiffs' claims are also subject to the FLSA. (Doc. No. 383 at 24 (citing Doc. No. 269 ¶¶ 110–14 (seeking relief under the FLSA))). The GMWL specifies that

> [t]his chapter shall not apply to any employer who is subject to the minimum wage provisions of any act of Congress as to employees covered thereby if such act of Congress provides for a minimum wage which is greater than the minimum wage which is provided for in this Code section.

GA. CODE ANN. § 34-4-3(c). Bojangles is an employer subject to the minimum wage provisions of the FLSA, which mandates a higher minimum wage ($7.25/hr) than the GMWL ($5.15/hr). Compare GA. CODE ANN. § 34-4-3(a) with 29 U.S.C. § 206(a)(1)(C). Consequently, GA. CODE ANN. § 34-4-3 does not apply to Bojangles.

Plaintiffs acknowledge as much. In response to Defendant's summary judgment motion, Plaintiffs contend that "[t]he Georgia Class also alleges violations of O.C.G.A. § 34-7-2, which

24

Bojangles does not challenge, so those claims survive summary judgment." (Doc. No. 396 at 21). Because Plaintiffs do not raise a genuine dispute of material fact that would make GA. CODE ANN. § 34-4-3 applicable to Defendant, Bojangles is entitled to judgment against Plaintiffs' GA. CODE ANN. § 34-4-3 claim as a matter of law. Defendant's summary judgment motion with respect to GA. CODE ANN.  § 34-4-3 will be granted. Plaintiffs are correct, however, that Bojangles fails to challenge the Georgia Plaintiffs' claim under GA. CODE ANN. § 34-7-2. (See Doc. No. 269 ¶¶ 164–5; Doc. No. 396 at 21). Consequently, the Georgia Plaintiffs' GA. CODE ANN. § 34-7-2 claim survives summary judgment.

### vii.  Plaintiff's Remaining State Law Wage and Hour Claims

Plaintiffs also raise wage and hour claims arising under Kentucky, South Carolina, and North Carolina state law. Defendant acknowledges that all three states' wage and hour laws apply the same standard of proof as the FLSA. (Doc. No. 383 at 25); see Clark v. Teamster Local Union 651, 349 F. Supp. 3d 605, 619 (E.D. Ky. 2018); Popeck v. Rawlings Co. LLC, No. 3:16-CV-00138-GNS-DW, No. 3:16-cv-138-GNS-DW, 2018 WL 2074198, at *18 (W.D. Ky. May 3, 2018); Throckmorton v. Summerville Police Dep't, No. 2:20-cv-1936-RMG, 2020 WL 3490212, at *4 (D.S.C. June 26, 2020); Watkins v. Disabilities Bd. of Charleston Cnty., 444 F. Supp. 2d 510, 516 (D.S.C. 2006); N.C. GEN. STAT. § 95-25.14(a)(1); Cooper v. Creative Homes of Distinction, L.L.C., 152 N.C. App. 718, 568 S.E.2d 337 (2002). Defendant's motion for summary judgment against Plaintiffs' Kentucky, South Carolina, and North Carolina wage and hour claims is denied for the same reason it is denied with respect to Plaintiffs' FLSA claims.

### ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. No. 389) is **DENIED**, and Defendant's Motion for Summary Judgment (Doc.

No. 382) is **GRANTED** in part and **DENIED** in part. Specifically, Defendant's motion is **GRANTED** with respect to Plaintiff Stafford's EPA, discriminatory discharge, and failure to promote claims and opt-in Plaintiffs' TWRA and GMWL claims. Defendant's motion is **DENIED** with respect to Plaintiff Stafford's disparate discipline, wage discrimination, and North Carolina wrongful discharge claims, and opt-in Plaintiffs' remaining claims.

Max O. Cogburn Jr.
United States District Judge

Signed: October 20, 2023